EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Yumac Home Furniture, Inc.<br><br>Peticionarios<br><br>v.<br><br>Caguas Lumber Yard, Inc.<br>h/n/c Empresas Massó<br><br>Recurridos | Certiorari<br><br>2015 TSPR 148<br><br>194 DPR \_\_\_\_ |

Número del Caso: CC-2013-892

Fecha: 5 de noviembre de 2015

Tribunal de Apelaciones:

Región Judicial de Caguas y Utuado, Panel XI

Abogada de la Parte Peticionaria:

Lcda. Edna Maitté Vélez Muñiz

Abogada de la Parte Recurrida:

Lcdo. Gildo Massó Ortiz

Materia: Procedimiento Civil – Regla 65.3(c): notificación de Sentencia por edicto cuando demandado fue emplazado personalmente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Yumac Home Furniture, Inc.

    Peticionarios

        v.                        CC-2013-892       Certiorari

Caguas Lumber Yard, Inc.
h/n/c Empresas Massó

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 5 de noviembre de 2015.

Este caso nos brinda la oportunidad de determinar si, conforme a la R. 65.3(c) de Procedimiento Civil, 32 LPRA Ap. V, según enmendada por la Ley 98-2012, se requiere notificar una sentencia por edicto cuando el demandando fue emplazado personalmente, pero no compareció al proceso. Por los fundamentos que más adelante esbozaremos, este Tribunal contesta la interrogante en la negativa.

Comparece Yumac Home Furniture, Inc. (Yumac o peticionaria) y nos solicita que revoquemos una

Resolución desestimatoria emitida por el Tribunal de Apelaciones, en la cual ese foro se declaró sin jurisdicción para atender un recurso presentado por Caguas Lumber Yard, Inc. h/n/c Empresas Massó (Caguas Lumber o parte recurrida). El foro apelativo intermedio razonó que dicho recurso era prematuro debido a que fue presentado antes de que el Tribunal de Primera Instancia notificara adecuadamente su Sentencia, por lo que aún no había comenzado a transcurrir el término para apelar o recurrir. En específico, el Tribunal de Apelaciones concluyó que el mecanismo adecuado para notificar a Caguas Lumber era mediante edictos, puesto que era un demandado que nunca compareció al pleito. Veamos los hechos pertinentes a la controversia ante nuestra consideración.

I

Yumac[1] presentó una demanda el 13 de septiembre de 2012 por cobro de dinero contra Empresas Massó por mercancía suplida y no pagada.[2] En su demanda, la peticionaria expuso que las partes tuvieron una relación comercial durante varios años, pero la misma se vio afectada debido al constante incumplimiento de pago por parte de Empresas Massó. En particular, Yumac alegó que la parte recurrida le adeuda $27,373.38 por concepto de

---

[1] Yumac Home Furniture, Inc. (Yumac) es una corporación organizada al amparo de las leyes de Puerto Rico, la cual se dedica a la venta de equipo y materiales de ebanistería.

[2] En la demanda se plantea que Empresas Massó tiene capacidad jurídica para demandar y ser demandada. Apéndice de la Petición de *certiorari*, pág. 35.

compra de materiales de ebanistería y que gestionó sin éxito -a través de llamadas telefónicas y requerimientos personales- el pago de esa cantidad. A su vez, Yumac indicó que el 2 de febrero de 2012 envió una carta por correo certificado con acuse de recibo requiriendo la suma adeudada y Empresas Massó contestó la misiva, pero al día de hoy no ha pagado la deuda. En consecuencia, la peticionaria solicitó al tribunal de instancia que declarara con lugar su demanda y condenara a Empresas Massó al pago de $27,373.38 más las costas, gastos, intereses y $3,000 de honorarios de abogado.

El 17 de septiembre de 2012 se expidió el emplazamiento a nombre de Empresas Massó y el Sr. Gildo Massó. Entonces, el 28 de septiembre de ese mismo año se emplazó a Empresas Massó por conducto de la Sra. Maribeliz Veguilla, secretaria en la oficina designada de la corporación localizada en San Lorenzo, Puerto Rico. Debido a que Empresas Massó no compareció ni contestó dentro del término establecido, Yumac presentó una *Moción solicitando anotación de rebeldía* el 7 de noviembre de 2012. Al día siguiente, el foro de instancia dictó una Sentencia en rebeldía mediante la cual declaró con lugar la demanda.[3] En consecuencia, condenó a Empresas Massó a pagar a Yumac los $27,373.38 por la mercancía suplida y no

---

[3] La notificación y el archivo en autos fue el 13 de noviembre de 2012. La Sentencia fue notificada a esta dirección postal: PO Box 446, Caguas, PR 00726-0446.

pagada, intereses al 4.5% anual, costas y $3,000 de honorarios de abogado.

Ahora bien, el 30 de enero de 2013, Yumac solicitó al tribunal de instancia que enmendara el epígrafe de la Sentencia para que leyera Caguas Lumber Yard, Inc. h/n/c Empresas Massó como parte demandada. Según expuso Yumac, el nombre comercial utilizado por la compañía es Empresas Massó, pero el nombre corporativo correcto es Caguas Lumber Yard, Inc. (Caguas Lumber). Así las cosas, el 12 de febrero de 2013 el foro de instancia emitió una Sentencia Enmendada *Nunc Pro Tunc* mediante la cual se cambió el nombre de la parte recurrida en el epígrafe, según solicitado por Yumac. Esta Sentencia Enmendada fue notificada a la misma dirección postal que obraba en el expediente[4] y fue archivada en autos el 28 de febrero de 2013.

El 7 de marzo de 2013, Caguas Lumber compareció -sin someterse a la jurisdicción del tribunal- por primera vez en el pleito mediante una *Moción de reconsideración y relevo de sentencia*. En particular, adujo que no fue emplazada ni notificada del pleito; que no surge emplazamiento alguno a nombre de Caguas Lumber Yard, Inc., por lo que el foro de instancia carecía de jurisdicción para dictar sentencia en su contra. Así pues, Caguas Lumber solicitó que se dejara sin efecto la Sentencia Enmendada debido a que la misma era nula, por lo que

---

[4] Véase nota núm. 3.

procedía el relevo de sentencia conforme a la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V.

Más adelante, a principios de mayo de 2013, Yumac se opuso a la petición de reconsideración y relevo de sentencia. Indicó que Empresas Massó es el nombre comercial utilizado por varias corporaciones afiliadas, entre ellas Caguas Lumber, y que el emplazamiento se diligenció en la oficina designada de la corporación en San Lorenzo, Puerto Rico, por todo lo cual se debía entender que la empresa fue emplazada correctamente. Más aun cuando "en tod[a]s las cartas extrajudiciales emitidas a la parte demandante, independientemente del nombre de la corporación, siempre el Sr. Gildo Massó, firmaba las mismas como Empresas Massó".[5]

Examinados los escritos de las partes, el 17 de mayo de 2013, el tribunal de instancia declaró "no ha lugar" a la *Moción de reconsideración y relevo de sentencia* presentada por Caguas Lumber.[6] Luego de transcurrido el término para apelar, Yumac presentó en julio de 2013 una *Moción solicitando ejecución de sentencia mediante embargo*.

No obstante, inconforme con la decisión del foro de instancia, el 23 de julio de 2013, esto es, 63 días después de la notificación y el archivo en autos de la Resolución emitida por el tribunal de instancia en cuanto

---

[5] Apéndice de la Petición de *certiorari*, pág. 48.

[6] La notificación y el archivo en autos fue el 21 de mayo de 2013.

a la *Moción de reconsideración y relevo de sentencia*, Caguas Lumber presentó una Petición de *certiorari* ante el Tribunal de Apelaciones. Por su parte, el 5 de agosto de 2013, Yumac presentó su oposición y solicitó la desestimación del recurso de *certiorari*. En particular, Yumac planteó que el foro apelativo intermedio carecía de jurisdicción debido a que el recurso presentado por Caguas Lumber no se perfeccionó, pues no se había cumplido con la notificación simultánea a Yumac. Asimismo, Yumac alegó que Caguas Lumber presentó su recurso fuera del término de cumplimiento estricto de 30 días, ello sin demostrar justa causa para la tardanza.

Luego de considerar la Petición de *certiorari* y su oposición, el Tribunal de Apelaciones dictó una Resolución el 20 de agosto de 2013 mediante la cual desestimó el recurso por falta de jurisdicción, pero por ser prematuro.[7] Al interpretar la Regla 65.3(c) de Procedimiento Civil, 32 LPRA Ap. V, según enmendada por la Ley 98-2012, el tribunal apelativo intermedio concluyó que el término para revisar la Sentencia emitida por el foro de instancia contra Caguas Lumber no había comenzado a transcurrir debido a que ese dictamen debía ser notificado por edicto, de forma tal que el recurso de Caguas Lumber era prematuro. Así, determinó que "era necesario que tanto la sentencia dictada el 8 de noviembre de 2012 como la

---

[7] La notificación y el archivo en autos fue el 22 de agosto de 2013.

sentencia "*nunc pro tunc*" del 12 de febrero de 2013 fueran notificada por edicto, ya que el demandando nunca compareció al pleito".[8]

Inconforme con la determinación del foro apelativo intermedio, Yumac solicitó reconsideración oportunamente. Sin embargo, el Tribunal de Apelaciones declaró "no ha lugar" su petición el 12 septiembre de 2013.[9]

Así las cosas, el 23 de octubre de 2013, Yumac recurrió ante esta Curia mediante una Petición de *certiorari*, en la cual señaló los errores siguientes:

> **(1) Erró el Tribunal de Apelaciones al no desestimar el recurso de *Certiorari* presentado por la parte recurrida por ser uno tardío sin justa causa.**

> **(2) Erró el Tribunal de Apelaciones al concluir que la Sentencia emitida por el Tribunal de Instancia no era final y firme por no haberse notificado por edicto, a tenor con su interpretación de la enmienda a la Regla 65.3(c) de Procedimiento Civil, aun cuando la parte recurrida fue emplazada personalmente, nunca objetó la forma de notificación de la sentencia y aceptó haber recibido la misma.**

Expedido el recurso, Yumac presentó su Alegato el 16 de junio de 2014, mientras Caguas Lumber presentó el suyo el 16 de julio de 2014. De esa forma, el caso quedó sometido para adjudicación en los méritos el 12 de agosto de 2014. Con el beneficio de las comparecencias de ambas partes, resolvemos.

---

[8] Apéndice de la Petición de *certiorari*, pág. 15.

[9] La notificación y el archivo en autos fue el 23 de septiembre de 2013.

## II

Por estar estrechamente relacionados, discutiremos de forma conjunta los señalamientos de error.

### A. *La doctrina de jurisdicción judicial*

La jurisdicción de un tribunal se define como la autoridad que por una ley o la Constitución se le ha concedido al foro para considerar y decidir casos o controversias.[10] En múltiples y variadas ocasiones hemos expresado que los tribunales debemos ser celosos guardianes de esa jurisdicción que nos ha sido concedida, examinando tal aspecto en primer orden, incluso cuando no haya sido planteado por ninguna de las partes.[11] Además, hemos señalado que los tribunales no tienen discreción para asumir jurisdicción donde no la hay.[12] Tal es la importancia de la doctrina de jurisdicción judicial. En nuestra forma republicana de gobierno es la doctrina de jurisdicción judicial la que asegura que los tribunales de justicia, últimos intérpretes de la ley y la Constitución, no actuemos a nuestra entera discreción y prudencia, adjudicándonos una soberanía que solo la encarna el pueblo al que juzgamos. La doctrina de jurisdicción judicial comprende entonces que los tribunales, al igual que los

---

[10] Cordero et al. v. ARPe et al., 187 DPR 445, 456 (2012); Shell v. Srio. Hacienda, 187 DPR 109, 122 (2012); Cruz Parrilla v. Depto. Vivienda, 184 DPR 393, 403 (2012); S.L.G. Solá-Moreno v. Bengoa Becerra, 182 DPR 675, 682 (2011).

[11] Horizon v. JTA. Revisora, RA Holdings, 191 DPR 228, 234 (2014).

[12] Mun. de San Sebastián v. QMC Telecom, 190 DPR 652 (2014); S.L.G. Solá-Moreno v. Bengoa Becerra, supra; González v. Mayagüez Resort & Casino, 176 DPR 848, 856 (2009).

componentes de las demás ramas constitucionales, tenemos límites.

Sin embargo, por la naturaleza de esta Rama, los tribunales paradójicamente estamos llamados constitucionalmente a interpretar los propios estatutos que nos otorgan la jurisdicción para hacerlo. Así pues, es el propio tribunal el que decide en última instancia si tiene autoridad para determinar tal o cual controversia. Es en consideración a esto último que, ante toda controversia jurídica que se nos presente, se nos requiere no solo examinar el aspecto jurisdiccional, sino hacerlo conscientes de lo delicado que entraña el asunto para la salud de nuestra democracia constitucional.[13]

Ahora bien, la doctrina de jurisdicción judicial comprende a su vez otro aspecto de vital importancia en el contexto de cada caso en particular: el aspecto de juego justo ("*fair play*").[14] Se trata de que las reglas en el proceso judicial deben ser las mismas para todas aquellas partes que se encuentren en las mismas condiciones, conforme lo dispuso el legislador. No puede un tribunal, por ejemplo, hacer acepción concediéndole más tiempo a una parte al extender un término jurisdiccional en un caso.

Si el legislador determinó que la presentación de una causa de acción, o de un recurso apelativo con relación a esa causa de acción, prescribe en un tiempo

---

[13] Id.

[14] International Shoe Co. v. State of Washington, 326 U.S. 310 (1945).

determinado para todo ciudadano o ente jurídico que se encuentren bajo las mismas condiciones, no puede un tribunal conceder más tiempo o justificar una causa que en realidad no sea justificable, favoreciendo así a alguna parte incumplidora en un caso. De igual manera, si el legislador determinó que unas acciones en el proceso judicial tienen que ser notificadas por una parte a las demás en un término específico de tiempo, debe ser así en todos los casos y para todas las partes que se encuentren bajo las mismas condiciones, a menos que realmente exista justa causa en la dilación de la notificación.[15]

En resumen, las reglas tienen que ser las mismas en cada caso para todas las partes que se encuentran bajo las mismas condiciones, conforme lo dispuso el legislador. Tal máxima, como consecuencia de la doctrina de jurisdicción judicial, procura un proceso judicial justo e imparcial que proporciona legitimación a nuestro sistema de justicia y que, sin duda, es corolario a su vez del debido proceso de ley constitucional.

B. *Notificación de la sentencia*

En el presente caso, el foro apelativo intermedio determinó que el proceso de notificar la sentencia, y la sentencia enmendada, fue defectuoso. La notificación y el archivo en autos de una copia de la notificación de una sentencia, resulta ser una etapa crucial del proceso

---

[15] <u>Soto Pino v. Uno Radio Group</u>, 189 DPR 84, 92-93 (2013).

adjudicativo.[16] Es a partir de ese momento que la sentencia se considera final mas no firme, pues de la misma puede recurrirse en búsqueda de un remedio apelativo. "Desde la fecha de esta diligencia se cuenta el término para apelar."[17] Así, en <u>Falcón Padilla v. Maldonado Quirós</u>, 138 DPR 983 (1995), dispusimos lo siguiente:

> Una vez dictada una sentencia, las Reglas de Procedimiento Civil imponen al secretario del tribunal la obligación de notificarla cuanto antes a todas las partes afectadas y de archivar en autos una copia de la constancia de dicha notificación. Este deber de notificar las sentencias no constituye un mero requisito impuesto por las Reglas de Procedimiento Civil. Su imperiosidad radica, además, en el efecto que tiene dicha notificación sobre los procedimientos posteriores a la sentencia.

Por eso, "[l]a correcta y oportuna notificación de las órdenes y sentencias es requisito *sine qua non* de un ordenado sistema judicial. Su omisión puede conllevar graves consecuencias, además de crear demoras e impedimentos en el proceso judicial".[18]

---

[16] <u>Falcón Padilla v. Maldonado Quirós</u>, 138 DPR 983 (1995).

[17] R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, San Juan, Lexisnexis de Puerto Rico, Inc., 5ta ed., 2010, pág. 378.

[18] J.A. Cuevas Segarra, Práctica Procesal Puertorriqueña: Procedimiento Civil, San Juan, Pubs. J.T.S., 1979, Vol. II, pág. 436.

**C. Término de presentación y notificación a las partes del recurso de *Certiorari* ante el Tribunal de Apelaciones**

Distinto al recurso de apelación de una sentencia final dictada por un tribunal de primera instancia, el recurso de *certiorari* ante el Tribunal de Apelaciones es un recurso discrecional que atiende mayormente determinaciones interlocutorias, no finales del foro primario.[19]

La Regla 32(D) del Reglamento del Tribunal de Apelaciones[20], dispone que el término para presentar un recurso de *certiorari* ante el Tribunal de Apelaciones es de 30 días contados a partir de la notificación de la resolución u orden. Este término, distinto al de una apelación, es de estricto cumplimiento, lo que significa que la parte que recurre tardíamente a presentar el recurso tiene la oportunidad de hacer constar las circunstancias que ameriten prorrogar el término, debido a la existencia de justa causa.[21] Sin embargo, la parte que actúa tardíamente debe hacer constar las circunstancias específicas que ameriten su justa causa y, si no lo hace, el tribunal carece de discreción para prorrogar el término y, por ende, acoger el recurso ante su consideración.[22]

---

[19] Mun. Rincón v. Velázquez Muñiz, 2015 TSPR 52.

[20] 32 LPRA Ap. V.

[21] Soto Pino v. Uno Radio Group, supra.

[22] Íd.; Rojas v. Axtmayer Ent., Inc., 150 DPR 560, 564 (2000).

En cuanto a la notificación a las partes de un recurso de *certiorari* ante el Tribunal de Apelaciones, el inciso (B) de la Regla 33 del Reglamento del Tribunal de Apelaciones, supra, dispone que la parte peticionaria notificará la solicitud de *certiorari*, debidamente sellada con la fecha y la hora de presentación, a los abogados de récord, o en su defecto, a las partes, así como al Procurador General y al Fiscal de Distrito en los casos criminales, dentro del término dispuesto para la presentación del recurso. Este término también es de cumplimiento estricto.

D. *Recurso prematuro*

Un recurso que se desestima por presentarse pasado el término provisto para recurrir, se conoce como un recurso tardío. Por su parte, un recurso que se ha presentado con relación a una determinación que está pendiente ante la consideración del tribunal apelado, o sea, que aún no ha sido finalmente resuelta, se conoce como un recurso prematuro. Sencillamente, el recurso se presentó en la secretaría antes de tiempo.

Un recurso prematuro, al igual que uno tardío, priva de jurisdicción al tribunal al cual se recurre. No obstante, existe una importante diferencia en las consecuencias que acarrea cada una de estas desestimaciones. La desestimación de un recurso por ser tardío priva fatalmente a la parte de presentarlo nuevamente, ante ese mismo foro, o ante cualquier otro. En

cambio, la desestimación de un recurso por prematuro le permite a la parte que recurre volver a presentarlo, una vez el foro apelado resuelve lo que estaba ante su consideración.[23]

Esta es la razón por la cual en el caso de autos, aunque el recurso fue desestimado en perjuicio de la parte recurrida, no es esta la que comparece, sino la parte victoriosa, la cual busca que el recurso se desestime de manera concluyente.

### E. *La Regla 65.3(c) de Procedimiento Civil*

De cardinal pertinencia a la controversia que nos ocupa es determinar el alcance de la Regla 65.3(c) de Procedimiento Civil de 2009[24], y su aplicación a las circunstancias de este caso.

La predecesora de la Regla 65.3 de 2009, la Regla 65.3 de 1979[25], en su parte pertinente establecía lo siguiente:

> (b) El secretario notificará el archivo de una orden o sentencia a las partes **en rebeldía por falta de comparecencia remitiéndoles, cuando su identidad fuere conocida, copia de la notificación a la última dirección conocida, y, si su identidad fuere desconocida o figurare con un nombre ficticio a los fines de la tramitación del pleito, publicando una copia de la notificación en un periódico de circulación general una vez por semana durante dos semanas consecutivas.** La notificación se considerará hecha en la fecha de la última publicación.

---

[23] Rodríguez v. Zegarra, 150 DPR 649, 654 (2000).

[24] 32 LPRA Ap V.

[25] 32 LPRA Ap. III R. 65.3.

Como vemos, el inciso (b) de la Regla 65.3 de 1979, disponía con relación a una parte que habiendo sido emplazada, ya fuera mediante emplazamiento personal o por edictos, se encontraba en rebeldía por falta de comparecencia. En estas circunstancias, la regla disponía que cuando la identidad de la parte fuere conocida, la sentencia tenía que remitírsele a la última dirección conocida. Por otra parte, cuando la identidad de la parte fuera desconocida o figurare con un nombre ficticio, la sentencia debía notificarse mediante edictos.

Con la aprobación de las nuevas reglas, la Regla 65.3(c) de Procedimiento Civil de 2009, en su parte pertinente dispuso lo siguiente:

> (c)[...]En el caso de partes en rebeldía que hayan sido emplazadas por edictos **o** que nunca hayan comparecido en autos o de partes demandadas desconocidas, el Secretario o Secretaria expedirá un aviso de notificación de sentencia por edictos para su publicación por la parte demandante.[...](énfasis y subrayado suplido).

Como vemos, la redacción de la nueva Regla 65.3(c) de 2009, cambió lo dispuesto en la anterior Regla 65.3, al exigir la notificación por edictos en los casos en los que la parte hubiera sido emplazada por edictos **o** "que nunca [hubiera] comparecido", esto es, aunque hubiera sido emplazada personalmente. Es decir, bajo dicha regla, el Tribunal tenía la obligación de notificar una Sentencia en Rebeldía por edicto para su publicación por la parte

demandante en tres circunstancias determinadas. Esto es, 1) cuando la parte se emplazó por edicto, 2) no compareció o 3) era un demandado desconocido.[26] Sin embargo, un análisis del Informe de las Reglas de Procedimiento Civil (Informe) preparado por el Comité Asesor Permanente de las Reglas de Procedimiento Civil (Comité), en marzo de 2008[27], nos ayuda a aclarar la intención en la redacción de la Regla.

Del Informe surge que el Comité fundamentó en parte la redacción de esta Regla 65.3(c) de 2009 en lo resuelto en el caso de Falcón Padilla v. Maldonado Quirós, supra, al señalar lo siguiente:

> "El Tribunal Supremo estableció en Falcón Padilla v. Maldonado Quirós que en los casos cuando una parte haya sido **emplazada por edictos a tenor con la Regla 4.6, por razón de que no pudo ser localizada en su última dirección conocida y se desconoce su paradero,** dicha parte deberá ser notificada de la sentencia recaída en rebeldía por falta de comparecencia mediante la publicación de edictos, **es decir, de la misma forma como fue notificada de la demanda en su contra".**[28] (Énfasis suplido; citas omitidas).

Como se desprende del Informe, lo que se pretendió con la Regla 65.3(c) de Procedimiento Civil de 2009, fue que la notificación de la sentencia mediante edictos se limitara a los casos de demandados en rebeldía que no

---

[26] Banco Popular de Puerto Rico v. Vilma Andino Solís, 2015 TSPR 3, pág. 16.

[27] Informe de las Reglas de Procedimiento Civil, Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial.

[28] Íd.

comparecen y que han sido emplazados por edictos, porque es de estos que se desconoce su paradero. De hecho, <u>Falcón Padilla v. Maldonado Quirós</u>, supra, es un caso en el que la parte había sido emplazada por edictos, no había comparecido y se pretendió que la sentencia se le notificara a la última dirección conocida. No obstante, este Tribunal determinó que había que notificarle la sentencia de la misma forma que había sido emplazada. La Regla incluye también, como ya hemos señalado, la notificación por edicto a aquellos demandados en rebeldía que sean desconocidos.

Ahora bien, en el año 2012, el inciso (c) de la Regla 65.3 de Procedimiento Civil de 2009, fue enmendado mediante la Ley 98-2012, de 24 de mayo de 2012, para disponer lo siguiente:

> (c)[...]En el caso de partes en rebeldía que hayan sido emplazadas<u>,</u> por edictos <u>**y**</u> que nunca hayan comparecido en autos o de partes demandadas desconocidas, el Secretario o Secretaria expedirá un aviso de notificación de sentencia por edictos para su publicación por la parte demandante.[...](énfasis y subrayado suplido).

Como vemos, la enmienda introducida por la Ley 98-2012 en el texto del inciso (c) de esta Regla se limitó a añadir una coma luego de la palabra "emplazadas" y a cambiar una "o" por una "y". En la exposición de motivos de la Ley 98-2012 se explica la razón de esta enmienda señalando lo siguiente:

> [D]e una lectura detallada de la Regla 60 con la Regla 65.3 surge que su aplicación fue un error y que el propósito de incluir la conjunción "o" en el inciso (c) es un error tipográfico que está conllevando esfuerzos y gastos innecesarios a ambas partes cuando la intención nunca fue esa. El propósito era para casos de edictos y no de aplicación a demandados que no comparezcan a vistas de Regla 60".[29]

Como señala el ilustrado Panel del Tribunal de Apelaciones en su Sentencia, la redacción del texto aludido en la Regla 65.3(c) después de la enmienda no es el más afortunado. Concluimos que, como claramente surge de la exposición de motivo de la Ley 98-2012 y, adelantamos en Banco Popular de Puerto Rico v. Vilma Andino Solís, 2015 TSPR 3, el texto del inciso (c) de la Regla 65.3, se dirige únicamente a dos circunstancias: 1) cuando la parte en rebeldía ha sido emplazada por edicto y nunca ha comparecido, y 2) cuando la parte demandada es desconocida. Nos explicamos.

### III

Como señalamos, la Ley 98-2012 enmendó el inciso (c) de la Regla 65.3 a los únicos efectos de incluir una coma después de la palabra "emplazadas", y cambiar la letra "o" en esa misma oración por la letra "y". De forma que la oración como quedó finalmente lee como sigue: "*En el caso de partes en rebeldía que hayan sido emplazadas, por edictos y que nunca hayan comparecido...*".

---

[29] Exposición de motivos Ley 98-2012.

Para poder concluir, como ya hemos adelantado, que este inciso (c) de la Regla 65.3 se refiere únicamente a partes en rebeldía que hayan sido emplazadas por edictos y que nunca hayan comparecido, y partes desconocidas, conviene aclarar la expresión *"partes en rebeldía que hayan sido emplazadas, por edictos y que nunca hayan comparecido"*. No nos cabe duda de que, al igual que como ocurrió con la versión original de este inciso, la colocación de una coma después de la palabra *"emplazadas"* también responde a un error tipográfico o a un error de redacción, que ciertamente le resta claridad al texto. Nos explicamos.

La expresión "por edictos" en la oración solo hace sentido si se acompaña con la palabra "emplazadas" como un todo; esto es, "emplazadas por edictos". La preposición "por" en esta expresión se utiliza en una de sus más de 25 acepciones, y en este contexto "denota el modo de ejecutar algo".[30] O sea, el fin de la preposición "por" en la expresión no es otro que establecer o describir la forma en que se llevó a cabo el pretérito perfecto de emplazar que es "emplazada", en plural, "emplazadas". De manera que la expresión debe leerse *"[...] en el caso de partes emplazadas por edictos y que nunca hayan comparecido".*

Aclarado ese punto, en su resolución, el foro apelativo intermedio también señala que "una controversia

---

[30] Diccionario de la Real Academia Española, Vigésima Segunda Edición, Tomo II, Editorial Espasa Calpe, pág.1803.

similar [al caso de autos] surgió a raíz del texto de la Regla 65.3 de Procedimiento Civil de 1979 con el caso de Falcón Padilla v. Maldonado, supra". Sin embargo, como ya señalamos, distinto al caso de autos, en Falcón Padilla la parte no compareciente y en rebeldía había sido emplazada mediante edictos. En ese caso lo que este Tribunal determinó fue que esa misma era la forma en que debía notificársele la sentencia, esto es, por edicto.

Por otra parte, haciendo referencia a la exposición de motivos de la Ley 98-2012 y al informe positivo de esta Ley en la Cámara de Representantes, el foro apelativo intermedio concluyó lo siguiente:

> Por otro lado, debemos presentar particular atención a que surge tanto del Historial Legislativo, como de la exposición de Motivos de la Ley 98-2012, que la intención del legislador al enmendar la Regla 65.3, *supra* era atemperar el procedimiento de notificación de la sentencia con el *procedimiento expedito de cobro de dinero dispuesto en la Regla 60, supra*. Por tanto, evaluada la intención de legislador al enmendar la Regla 65.3 de procedimientos Civil que obedeció a eliminar la notificación por edicto exclusivamente en los casos de Regla 60, *supra*, y siendo el presente caso una acción ordinaria de cobro de dinero, no le aplica dicha excepción.[31]

En primer lugar, ya hemos resuelto que la circunstancia del caso de autos no se encuentra contenida en el texto de la Regla 65.3(c) por lo que no le sería de

---

[31] Resolución del Tribunal de Apelaciones, pág. 14.

aplicación la llamada "excepción" a la que alude el distinguido foro apelativo intermedio.

En segundo lugar, el hecho de que el legislador haya **identificado y admitido** el problema que causó el error tipográfico en cuestión sobre los procedimientos particulares que se establecen mediante la Regla 60, en ninguna manera significa que este quiso limitar el alcance de la enmienda a la Regla 65.3(c) únicamente a los procedimientos de la Regla 60. Tal limitación no surge del texto de la Regla 65.3(c), ni del historial legislativo.

Ahora bien, en el presente caso los recurridos fueron emplazados personalmente en sus oficinas conociéndose perfectamente, no sólo su identidad, sino su dirección, por lo que, como hemos advertido, no se dan ninguna de las condiciones que establece la Regla 65.3 (c), que obligaría a la sentencia por edictos.[32] ¿Cómo debe notificarse entonces la sentencia en circunstancias como esta?

"El emplazamiento es un acto procesal mediante el cual se comunica al demandado la demanda presentada en su contra y se le requiere a comparecer en autos para formular la alegación que proceda."[33] Una vez la persona ha sido correctamente emplazada, el Tribunal adquiere

---

[32] Partimos del supuesto de que Caguas Lumber Yard Inc. fue emplazada cuando se emplazó a Empresas Massó, como si fueran una y la misma parte. Esto pues, este asunto fue atendido por el Tribunal de Primera Instancia y este determinó que Caguas Lumber Yard Inc. y Empresas Massó son la misma persona. Tal determinación advino final y firme, toda vez que transcurrió el término dispuesto sin ser apelada oportunamente.

[33] Hernández Colón, op cit., pág. 220.

jurisdicción porque la persona ha advenido en conocimiento, como impone el debido proceso de ley, de que existe un proceso judicial del cual ella es parte. El que una vez emplazada la parte demandada nunca haga uso de los procedimientos y recursos judiciales a su disposición, no hace menos cierto que la persona estuvo correctamente advertida.

¿Por qué hemos de pensar entonces que el envío a su última dirección conocida, no es un mecanismo suficientemente eficaz, adecuado y justo -en cumplimiento con el debido proceso de ley- para notificar el resultado final del proceso? Ciertamente no existe ninguna razón válida. Como bien argumenta la parte peticionaria en su alegato, exigir que un demandante publique una sentencia por edicto para notificar a un demandado que, habiendo sido emplazado personalmente, se cruzó de brazos u optó por no comparecer al pleito, es un esfuerzo y gasto innecesario para la parte demandante.

Además, analizado lo acontecido en el historial legislativo con relación a la aprobación de la Regla 65.3(c) de Procedimiento Civil de 2009, y su accidentado proceso de enmiendas, nada hay que siquiera nos sugiera que la intención del Legislador con relación a la notificación de una sentencia a una parte que ha sido emplazada personalmente y que se encuentra en rebeldía por nunca haber comparecido, sea distinta a aquella habida en la Regla 65.3 de Procedimiento Civil de 1979, supra.

En vista de lo anterior, determinamos que una vez una parte ha sido emplazada personalmente conforme establecen los parámetros de la Regla 4 de Procedimiento Civil[34] para este tipo de emplazamiento, la sentencia que en su momento recaiga deberá ser notificada a la última dirección conocida de la parte, aunque se encuentre en rebeldía por nunca haber comparecido.

Por lo tanto, erró el Tribunal de Apelaciones al determinar que hubo defecto en la notificación de las sentencias emitidas por el Tribunal de Primera Instancia y que, como consecuencia, no tenía jurisdicción sobre el recurso por ser prematuro.

**IV**

Una vez determinado que la Sentencia del Tribunal de Primera Instancia estuvo debidamente notificada, nos corresponde entonces determinar si la parte recurrida presentó su petición de *certiorari* ante el Tribunal de Apelaciones oportunamente. Del expediente surge que el recurso fue presentado transcurrido 63 días de haberse notificado la resolución del Tribunal de Primera Instancia declarando no ha lugar una Moción de Reconsideración presentada por esta última, sin justa causa. Así, el Tribunal de Apelaciones ciertamente debió declararse sin jurisdicción, pero no porque el recurso fuera prematuro,

---

[34] 32 LPRA Ap. V, R. 4.

sino porque se presentó tardíamente.[35] El estudio del expediente del caso de autos nos revela que a la parte peticionaria le asiste la razón.

Como señalamos la Regla 32(D) del Reglamento del Tribunal de Apelaciones, supra, establece que el término para presentar un recurso de *certiorari* ante el Tribunal de Apelaciones es de 30 días contados a partir de la notificación de la resolución u orden, término que es de estricto cumplimiento.

**V**

Por las razones antes expresadas, se confirma la sentencia del Tribunal de Apelaciones pero por otros fundamentos.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[35] La parte peticionaria señala además que la parte recurrida admitió ante el foro apelativo intermedio haber notificado a la parte aquí peticionaria el recurso de *certiorari* fuera del término que tenía para presentar el mismo. No obstante, aunque ciertamente surge del expediente lo señalado por la parte peticionaria, por la determinación que tomamos se hace obviamente académico discutir tal señalamiento.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Yumac Home Furniture, Inc.

Peticionarios

v.   CC-2013-892   Certiorari

Caguas Lumber Yard, Inc.
h/n/c Empresas Massó

Recurridos

SENTENCIA

San Juan, Puerto Rico, a 5 de noviembre de 2015.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se confirma la sentencia del Tribunal de Apelaciones pero por otros fundamentos.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta señora Fiol Matta, la Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez concurren con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo