Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL COND. VILLAS DEL MAR BEACH RESORT<br><br>Recurrido<br><br>V.<br><br>MULTINATIONAL INSURANCE COMPANY<br><br>Peticionaria | TA2026CE00207 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: LO2020CV00007<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 9 de marzo de 2026.

El 19 de febrero de 2026, compareció ante este Tribunal de Apelaciones Multinational Insurance Company (en adelante, Multinational o parte peticionaria), mediante recurso de *certiorari*. Por medio de este, nos solicita que revisemos la *Resolución* emitida el 16 de enero de 2026 y notificada el 20 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Carolina. En virtud del aludido dictamen, el foro *a quo* aprobó, en parte, el *Memorando de Costas* presentado por el Consejo de Titulares del Condominio Villas del Mar Beach Resort (en adelante, Consejo de Titulares o parte recurrida).

Por los motivos que adelante se esbozan, se *desestima* el recurso de *certiorari* por falta de jurisdicción, al este ser prematuro.

Además, se declara No Ha Lugar la solicitud de consolidación presentada por la parte peticionaria.

**I**

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda* sobre incumplimiento de contrato de seguros, y daños y perjuicios, instada por el Consejo de Titulares en contra de Multinational. En esencia, la parte recurrida, entre otras cosas, solicitó el cumplimiento específico del contrato de seguros suscrito entre el Consejo de Titulares y Multinational. Explicó que, Multinational había expedido la póliza de seguros número 88-CP-000320670-1 (en adelante, Póliza), a favor del Condominio Villas del Mar. Dicha póliza cubría el periodo de 28 de febrero de 2017 a 28 de febrero de 2018. Según la parte recurrida, la cubierta de la Póliza incluía todos los edificios y otras estructuras que pudieran sufrir daños hasta un total de $23,816,745.00. Asimismo, cubría daños a la propiedad causados por viento e inundaciones, y contenía un "*Windstorm Deductible*" para daños ocasionados por el viento, que estaba sujeto a un deducible de 2% del valor de la propiedad. En su *Demanda*, la parte recurrida arguyó que, debido al paso del huracán María en septiembre de 2017, el Condominio sufrió daños en el techo, ventanas, estructura del edificio, espacios interiores y estructuras auxiliares. Tras lo anterior, la parte recurrida presentó una reclamación ante Multinational[1], donde solicitó que los daños ocasionados por el huracán María fueran cubiertos de acuerdo a los términos de la Póliza. Sin embargo, según alegado en la *Demanda*, Multinational no fue diligente con el trámite de la reclamación, pese a haberle presentado varios estimados donde se documentaba los daños a la propiedad y donde le requirió el pago de los costos de arreglo a la misma, según la Póliza. La parte recurrida adujo que, más adelante, Multinational atendió la reclamación. No obstante, llevó a cabo una investigación inadecuada donde evaluó de forma

---

[1] Número de reclamación 317405.

errónea los daños de la propiedad en cuestión. A tales efectos, Multinational le ofreció a la parte recurrida una cantidad menor a la solicitada. De igual manera, la parte recurrida acotó que, Multinational se negó a emitir el pago de los daños cubiertos y consecuentemente, no se había podido reparar la propiedad. Por lo anterior, solicitó al foro primario que: determinara que Multinational incumplió con el contrato y que actuó de mala fe; ordenara a Multinational a pagarle una cantidad no menor de $12,500,000.00 como compensación por los daños ocasionados por el huracán María en la propiedad; le ordenara a Multinational a pagarle una cantidad no menor de $1,250,000.00 a la parte recurrida en concepto de daños ocasionados por la parte peticionaria al incumplir con la Póliza y violentar el Código de Seguros de Puerto Rico, y finalmente, le ordenara a la peticionaria el pago de costas y honorarios.

Transcurridas varias incidencias procesales, innecesarias pormenorizar, la parte peticionaria presentó *Contestación a Demanda.* En resumen, negó las alegaciones de la *Demanda* y afirmó haber cumplido a cabalidad con sus obligaciones. Añadió que, algunos de los daños reclamados en la *Demanda* fueron exponencialmente sobrevalorados, especulativos, exagerados y preexistentes. Solicitó al foro primario que declarara sin lugar la reclamación de epígrafe y le impusiera a la parte recurrida el pago de costas, gastos y honorarios de abogados.

Luego de varios trámites procesales impertinentes al recurso de epígrafe, el 6 de diciembre de 2022, el Consejo de Titulares presentó *Moción Solicitando Designación de Comisionado(a) Especial.* La parte peticionaria se opuso a dicha moción por medio de *Oposición a Solicitud de Designación de Comisionado Especial.* Mediante *Orden* emitida el 21 de febrero de 2023, el foro primario les ordenó a las partes someter una moción conjunta donde

propusieran un candidato para la designación de un Comisionado Especial al amparo de la Regla 41 de Procedimiento Civil. En cumplimiento con lo ordenado, las partes de epígrafe presentaron *Moción Conjunta en Cumplimiento de Orden Informando Acuerdo de Designación de Comisionado Especial.* Consecuentemente, el foro *a quo* emitió *Orden de Nombramiento y Encomienda de Comisionado Especial* donde le encomendó al comisionado elegido por las partes: 1) resolver todas las controversias planteadas en el caso de epígrafe respecto a los daños reclamados, 2) completar inventario y avalúo de daños ocasionados por el huracán María en la propiedad, 3) establecer el alcance de aquellas reparaciones necesarias, 4) conforme a la prueba presentada por las partes, ajustar el valor de daños conforme a los términos, límites asegurados, condiciones y exclusiones de la póliza expedida por Multinational, y 5) reconocer créditos a las partes según correspondiera.

El 12 de febrero de 2025, las partes presentaron *Moción Conjunta Presentando Informe del Comisionado Especial*, donde anejaron el *Informe Preliminar* y el *Informe Final*, ya que era necesario evaluar ambos documentos. Así las cosas, el 5 de noviembre de 2025, el foro recurrido celebró una vista argumentativa donde las partes expusieron sus planteamientos respecto al *Informe Final* emitido por el Comisionado Especial.

Posteriormente, el Tribunal de Primera Instancia emitió *Sentencia.* Dispuso que, luego de evaluar el *Informe Final*, así como los escritos de las partes y sus argumentos presentados en la vista, acogía dicho informe en su totalidad. A tales efectos, adoptó las determinaciones de hechos esbozadas en el *Informe Final*. El foro *a quo*, determinó que, el Comisionado Especial desempeñó de manera efectiva y puntual las responsabilidades delegadas. Asimismo, concluyó que, la cantidad total concedida a la parte recurrida por concepto de los daños producto del huracán María, luego de

considerar los daños, deducibles y los términos y condiciones de la Póliza, era de $1,851,336.55. A juicio del foro de primera instancia y respaldado por el expediente, Multinational reiteradamente se negó a ofrecer pagar cuantías de acuerdo a los daños sufridos en la propiedad, dentro de un tiempo razonable. El foro primario colegió, además, que las acciones de Multinational habían causado que el Condominio tuviera que incurrir en gastos de reparación en un periodo en el cual los precios de mano de obra y materiales de construcción eran mayores a los que existían al momento del evento que causó la pérdida. A tales efectos, el foro primario ordenó a Multinational a pagar intereses por mora, para un total de $945,576.48, lo cual aumenta la cuantía total en daños a $2,796,913.03. Asimismo, concedió a la parte recurrida una partida por honorarios de abogado, ascendente a $922,981.30, que representa el 33% de los $2,796,913.03.

El 9 de enero de 2026, el Consejo de Titulares presentó *Memorando de Costas.* Por medio de la aludida moción, arguyó haber incurrido en gastos de peritaje que ayudaron a la resolución del caso. Asimismo, desglosó una lista de gastos de litigio ascendientes a una suma de $74,359.45. Conforme a lo anterior, solicitó al Tribunal de Primera Instancia ordenarle a Multinational el pago de la aludida cantidad por concepto de costas conforme a la Regla 44 de Procedimiento Civil.

El 16 de enero de 2025, la primera instancia judicial emitió la *Resolución* cuya revisión nos atiene. En virtud de esta, el foro recurrido declaró Ha Lugar el *Memorando de Costas.* Sin embargo, aprobó en parte dicha moción, y expresó que, procedía la imposición de costas únicamente respecto a aquellas partidas que constituyen gastos ordinarios, necesarios y razonables para la tramitación del pleito, conforme a la Regla 44.1 de Procedimiento Civil. Excluyó las partidas periciales o extraordinarias que, conforme a derecho,

constituyen gastos propios de la parte litigante. A estos efectos, en su *Resolución,* el foro primario desglosó los gastos y desembolsos necesarios incurridos durante la tramitación del pleito, a saber:

**PARTIDAS DE GASTOS**

| | |
|---|---|
| A. Sellos de Rentas Internas | $214.00 |
| B. Aranceles | $105.00 |
| C. Deposiciones y gastos de transcripciones | $6,799.75 |
| D. Gastos de emplazador y mensajero para Tribunales | $207.00 |
| E. Honorarios del Comisionado Especial | $41,327.00 |

**TOTAL – Gastos Necesarios del Litigio-----------------$48,652.75**

En desacuerdo, el Consejo de Titulares presentó una *Moción de Reconsideración Parcial.*

Sin que aún el foro primario hubiese resuelto la aludida moción, la parte peticionaria acudió ante este foro revisor mediante el recurso de *certiorari* de epígrafe, donde nos solicitó que revisemos la *Resolución* emitida el 16 de enero de 2025. De igual manera, esbozó los siguientes señalamientos de error:

**Primer error:** Erró el TPI al emitir y notificar la resolución sobre costas antes de que transcurriera el término disponible a Multinational para oponerse al memorando de costas presentado por la parte recurrida.

**Segundo error:** Erró el TPI al imponerle a Multinational el pago de costas cuando Multinational no resultó ser parte perdidosa en el caso.

**Tercer error:** Erró el TPI al concederle a la parte recurrida costas por concepto de los honorarios del Comisionado Especial cuando mediante orden previa, final y firme del propio TPI, y emitida como resultado de una moción conjunta de las partes, se dispuso que los honorarios del Comisionado Especial serían sufragados en partes iguales por las partes.

**Cuarto error:** Erró el TPI al concederle a la parte recurrida costas por concepto de la toma de deposiciones y transcripciones y gasto por mensajero para tribunales, pues, la aparte recurrida no demostró que los gastos de deposiciones y transcripciones son gastos necesarios para probar su caso, ni el TPI tuvo ante sí las transcripciones de las deposiciones para poder evaluar si dichos gastos constituyeron unos necesarios, y los gastos de mensajero son gastos de oficina no recobrables como costas.

El 25 de febrero de 2025, compareció el Consejo de Titulares mediante *Moción de Desestimación de <u>Petición de Certiorari</u> de <u>Multinational</u>.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A. *El Certiorari***

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[2]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones[3], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". (citas omitidas) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[2] Véase también, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

[3] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf

(C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E)   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[4]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de

---

[4] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf

discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Jurisdicción

Nuestro Tribunal Supremo, ha definido la jurisdicción como el poder que ostentan los tribunales para considerar y decidir los casos y las controversias que sean presentados a su atención. *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *R&B Power. Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89 (2020).[5] Es normativa reiterada que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, es por lo que, los asuntos relativos a la jurisdicción son privilegiados y deben ser atendidos con prontitud. *R&B Power. Inc. v. Junta de Subastas ASG*, supra, pág. 698; *Báez Figueroa v. Adm. Corrección*, 209 DPR 288, 298 (2022).[6] La ausencia de jurisdicción puede ser levantada *motu proprio*, ya que, esta incide de forma directa sobre el poder del tribunal para adjudicar una controversia. *Allied Mgtm. Group. v. Oriental Bank*, 204 DPR 374, 386 (2020).[7]

Por consiguiente, un tribunal no tiene discreción para asumir jurisdicción donde no la hay, si carece de jurisdicción, deberá así declararlo y desestimar la reclamación sin entrar en sus méritos, pues la falta de jurisdicción no es susceptible de ser subsanada. *Yumac Home v. Empresas Massó*, 194 DPR 96, 107 (2015); *R&B*

---

[5] Véase *Torres Alvarado v Madera Atiles*, 202 DPR 495 (2019); *SLG Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011).

[6] *Torres Alvarado v. Madera Atiles*, supra, pág. 500; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009).

[7] *Torres Alvarado v Madera Atiles*, supra, pág. 500; *Ruiz Camilo v. Trafon Group Inc.*, 200 DPR 254, 268 (2018); *Souffront v. AAA*, 164 DPR 663, 674 (2005).

*Power. Inc. v. Junta de Subastas ASG*, supra, pág. 698; *Souffront v. AAA*, supra, pág. 674; *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394-395 (2022).

Cónsono con lo anterior, la Regla 83(C) del Reglamento del Tribunal de Apelaciones[8], confiere facultad a este Tribunal para a iniciativa propia o a petición de parte desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

### C. *Perfeccionamiento de Recursos*

Como norma general, el incumplimiento con las reglas de los tribunales apelativos impide la revisión judicial. *Cárdenas Maxán v. Rodríguez*, 119 DPR 642, 659 (1987). Es por lo que, las normas que rigen el perfeccionamiento de los recursos apelativos deben observarse rigurosamente. *Rojas v. Axtmayer Ent., Inc.*, 150 DPR 560, 564 (2000); *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 290 (2011); *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013). El incumplimiento con las disposiciones reglamentarias sobre forma, contenido y presentación de los recursos apelativos pudiera tener como consecuencia la desestimación de estos. *Pueblo v. Valentín Rivera*, 197 DPR 636, 641 (2017). Nuestra Máxima Curia ha requerido un cumplimiento fiel y estricto con las disposiciones reglamentarias, tanto de nuestro Tribunal Supremo como de este Tribunal de Apelaciones. *Hernández Maldonado v. Taco Maker*, supra, pág. 290; *Arriaga v. FSE*, 145 DPR 122, 130 (1998).

La Alta Curia ha dispuesto que, para que un recurso quede perfeccionado es necesaria su oportuna presentación y notificación del escrito a las partes apeladas. *González Pagán v. Moret Guevara*, 202 DPR 1062, 1070-1071 (2019); *Freire Ruiz et al. v. Morales,*

---

[8] Regla 83(C) del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.

*Hernández,* supra.  Una de las instancias en que un tribunal carece de jurisdicción es cuando se presenta un recurso tardío o prematuro. Lo anterior, debido a que, una apelación o recurso prematuro, al igual que uno tardío adolece del grave e insubsanable defecto de falta de jurisdicción.  *Báez Figueroa v. Adm. Corrección,* supra, pág. 299; *AFI v. Carrión Marrero,* 209 DPR 1 (2022); *Yumac Home Furniture v. Caguas Lumber Yard,* supra, pág. 107.  Su presentación carece de eficacia y como consecuencia no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo. *Báez Figueroa v. Adm. Corrección,* supra, pág. 299; *AFI v. Carrión Marrero,* supra, pág. 4.

Un recurso tardío es aquel que se presenta fuera del término disponible para ello, y que, consecuentemente, manifiesta la ausencia de jurisdicción.  Desestimar un recurso por ser tardío priva fatalmente a la parte de presentarlo nuevamente, ante ese mismo foro, o ante cualquier otro. *Yumac Home Furniture v. Caguas Lumber Yard,* supra, pág. 107.  En cambio, la desestimacion de un recurso por prematuro le permite a la parte que recurre volver a presentarlo, una vez el foro apeldo resuelve lo que estaba ante su consideración. *Íd.*

Finalmente, conforme ha resuelto el Alto Foro, la parte que comparece ante el Tribunal de Apelaciones, tiene la obligación de perfeccionar su recurso según lo exige el Reglamento del Tribunal de Apelaciones, para así colocar al foro apelativo en posición de poder revisar al tribunal de instancia. *Morán v. Marti,* 165 DPR 356, 367 (2005); *Freire Ruiz et al. v. Morales, Hernández,* supra.

En consonancia con lo anterior, nuestra última instancia judicial expresó en *Hernández Jiménez v. A.E.E,* 194 DPR 378, 382-383 (2015) que:

> Todo ciudadano tiene un derecho estatutario a que un tribunal de superior jerarquía revise los

dictámenes emitidos por los tribunales inferiores.[9] Ahora bien, ese derecho queda condicionado a que las partes observen rigurosamente el cumplimiento de las disposiciones reglamentarias establecidas por nuestro ordenamiento jurídico sobre la forma, contenido, presentación y notificación de los recursos, incluyendo lo dispuesto en los Reglamentos del Tribunal de Apelaciones y del Tribunal Supremo.[10]

Esbozado el derecho que enmarca la controversia de epígrafe, procedemos a aplicarlo.

### III

La parte peticionaria nos solicita que revisemos una *Resolución* emitida el 16 de enero de 2026, y notificada el 20 de enero de 2026, por el Tribunal de Primera Instancia. En virtud de dicha *Resolución,* el foro recurrido le impuso a Multinational el pago de costas únicamente respecto a aquellas partidas que constituyen gastos ordinarios, necesarios y razonables para la tramitación del pleito, conforme a la Regla 44.1 de Procedimiento Civil.

Como tribunal apelativo, en primer lugar, estamos obligados a examinar si tenemos jurisdicción para atender el recurso presentado. Veamos.

Conforme el derecho expuesto, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, es por ello que, los asuntos relativos a la jurisdicción son privilegiados y deben ser atendidos con prontitud[11]. La ausencia de jurisdicción incide de manera directa sobre el poder de los tribunales para adjudicar una controversia, es por lo que, esta puede ser levantada *motu proprio*[12].

Una de las instancias en las que un tribunal carece de jurisdicción para atender una controversia, es cuando se presenta un recurso de forma prematura. Ello, debido a que, una apelación

---

[9] *García Morales v. Mercado Rosario*, 190 DPR 632, 638 (2014).
[10] *Soto Pino v. Uno Radio Group*, supra, pág. 90; *Hernández Maldonado v. Taco Maker*, supra, pág. 290; *Arriaga v. F.S.E.*, supra, pág. 130.
[11] *Torres Alvarado v Madera Atiles*, supra, pág. 500; *González v. Mayagüez Resort & Casino*, supra, pág. 856.
[12] *Allied Mgtm. Group. v. Oriental Bank*, supra, pág. 386; *Torres Alvarado v Madera Atiles*, supra, pág. 500; *Ruiz Camilo v. Trafon Group Inc.,* supra, pág. 268; *Suffront v. A.A.A.*, supra, pág. 674.

o recurso prematuro, adolece del grave e insubsanable defecto de falta de jurisdicción[13]. La presentación de un recurso prematuro carece de eficacia, y consecuentemente, no produce ningún efecto jurídico, ya que no hay autoridad para acogerlo[14]. La desestimación de un recurso prematuro le permite a la parte recurrente volver a presentarlo, una vez el foro recurrido resuelve lo que estaba ante su consideración[15].

Conforme a ello, un tribunal no tiene discreción para asumir jurisdicción donde no la hay, si carece de jurisdicción, así deberá declararlo y desestimar la reclamación sin entrar en sus méritos, pues, la falta de jurisdicción no es susceptible de ser subsanada[16].

Según podemos observar, la parte peticionaria nos solicita que intervengamos con un asunto que el Tribunal de Primera Instancia aún no ha adjudicado. Puesto que, el Consejo de Titulares presentó una *Moción de Reconsideración* que, al momento de la presentación del recurso de epígrafe no había sido resuelta. Es necesario reseñar que, en conformidad con la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47, una vez se presenta una moción de reconsideración de manera oportuna y fundamentada, se interrumpe el término para recurrir al foro apelativo intermedio. Ese término comienza a decursar nuevamente "desde la fecha en que se archiva en autos copia de la notificación de la resolución resolviendo la moción de reconsideración".[17]

Los términos para recurrir ante este Tribunal de Apelaciones respecto a la *Resolución* en cuestión no han comenzado a

---

[13] *MMR Supermarket, Inc. v. Mun. de San Lorenzo*, 210 DPR 271 (2022); *Báez Figueroa v. Adm. Corrección*, supra, pág. 299; *AFI v. Carrión Marrero*, supra, pág. 4; *Yumac Home Furniture v. Caguas Lumber Yard*, supra, pág. 107.

[14] *MMR Supermarket, Inc. v. Mun. de San Lorenzo*, supra; *Báez Figueroa v. Adm. Corrección*, supra; *AFI v. Carrión Marrero*, supra, pág. 4.

[15] *Yumac Home Furniture v. Caguas Lumber Yard*, supra, pág. 107; *Rodríguez v. Zegarra*, 150 DPR 649, 654 (2000).

[16] *Yumac Home Furniture v. Caguas Lumber Yard*, supra, pág. 107; *AFI v. Carrión Marrero*, supra, pág. 4. *Mun. De San Sebastián v. QMC Telecom*, 190 DPR 652 (2014); *Suffront v. A.A.A.*, supra, pág. 674.

[17] Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47; véase además, Regla 52.2(g) de Procedimiento Civil, 32 LPRA Ap. V.

transcurrir. Por lo anterior, nos encontramos ante un recurso prematuro, el cual nos encontramos imposibilitados de resolver por falta de jurisdicción, ya que el foro *quo* aún no ha resuelto en sus méritos la moción de reconsideración. Puntualizamos que, la falta de jurisdicción no puede ser subsanada. En consecuencia, procedemos a desestimar el recurso de *certiorari* de epígrafe de conformidad con la Regla 83(C) del Reglamento de este Tribunal[18], el cual le confiere facultad a este Tribunal para a iniciativa propia desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

Por último, no obstante, lo aquí resuelto no impide que la parte peticionaria comparezca nuevamente ante este Tribunal dentro del término jurisdiccional dispuesto por nuestro ordenamiento legal, ello, una vez el foro recurrido emita su dictamen conforme a lo aquí dispuesto.

**IV**

Por los fundamentos que anteceden, se *desestima* el recurso de epígrafe por falta de jurisdicción, al este ser prematuro.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] Regla 83(C) del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.