ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| ELIEZER SANTANA BÁEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | KLRA202300088 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Querella Núm.: 215-22-085<br><br>Sobre: Contrabando |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero.

*Martínez Cordero, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2023.

Comparece el señor Eliezer Santana Báez (en adelante, señor Santana Báez o recurrente), miembro de la población correccional, mediante un recurso de *Revisión Administrativa* para solicitarnos que revisemos una *Resolución* emitida el 15 de diciembre de 2022, por el Departamento de Corrección y Rehabilitación (en adelante, DCR), mediante la cual, declaró incurso al recurrente tras determinarse que cometió ciertos actos prohibidos.[1] Sobre dicha *Resolución,* el recurrente presentó una *Solicitud de Reconsideración de Decisión de Informe Disciplinario para Confinado* en esa misma fecha, la cual no fue considerada.[2]

Por los fundamentos que expondremos a continuación, se *desestima* el recurso por falta de jurisdicción.

---

[1] Los actos y el correspondiente código por el cual el recurrente fue encontrado incurso fueron los siguientes: (i) 106. Contrabando peligroso; (ii) 108. Posesión, distribución, uso, venta o introducción de teléfonos celulares o equipo de telecomunicaciones; (iii) 129. Posesión de Sustancias Controladas; y (iv) 130. Posesión, introducción, uso, venta o distribución de materiales asociados con el Uso ilegal de sustancias controladas. Véase expediente administrativo de la Querella Disciplinaria Núm. 215-22-085 a las págs. 29-30.

[2] Véase expediente administrativo de la Querella Disciplinaria Núm. 215-22-085 a las págs. 32-38.

Número Identificador

SEN2023_____

**I**

El 8 de noviembre de 2022, se realizó un Registro de Rutina en el Edificio 2 y Módulo I, donde está ubicado el recurrente.[3] Dos (2) oficiales correccionales del DCR, Albert Robles Cruz (en adelante, Oficial Robles) y Yaremid Serrano Avilés, realizaron un registro en la celda asignada al recurrente y en su presencia.[4] Durante el registro, los oficiales correccionales ocuparon un (1) teléfono celular y dos (2) envases cilíndricos plásticos de bebidas, uno conteniendo cinco (5) cargadores caseros y el otro envase dos (2) bolsas con aparente sustancia, presuntamente sustancias.[5] El recurrente admitió que lo ocupado le pertenecía.[6]

El DCR procedió a contactar al Cuartel de Drogas Metropolitana. Como resultado, el Agente Víctor Agront Class (en adelante, Agente Agront) atendió e inició la investigación. El Agente Agront se llevó las bolsas con polvo para realizar la prueba de campo en presencia del Oficial Robles. Los polvos arrojaron positivo a heroína.[7] El recurrente fue relocalizado al área de segregación como medida de seguridad. En esa misma fecha, se presentó una denuncia contra el recurrente por violación Artículo 277 (posesión e introducción de objetos a un establecimiento penal) del Código Penal de Puerto Rico.[8]

El 10 de noviembre de 2022, el DCR radicó un *Informe de Querella de Incidente Disciplinario* imputándole al recurrente la violación de los siguientes actos prohibidos: (i) contrabando peligroso; (ii) posesión, distribución, uso, venta o introducción de teléfonos celulares o equipo de telecomunicaciones; (iii) posesión de sustancias controladas; y, (iv) posesión, introducción, uso, venta o

---

[3] *Id.*, a la pág. 22.
[4] *Id.*, a la pág. 22.
[5] *Id.*, a la pág. 22.
[6] *Id.*, a la pág. 22.
[7] *Id.*, a la pág. 11.
[8] 33 LPRA § 5370, Art. 277.

distribución de materiales asociados con el uso ilegal de sustancias controladas.[9]

Asimismo, se le presentó al recurrente un documento de *Derechos que le Asisten al Confinado Cuando se le Radica un Informe Disciplinario*, informándole de sus derechos en el procedimiento.[10] El 15 de noviembre de 2022, se le proveyó oportunidad al recurrente de prestar declaración escrita, en la cual notificó que haría su declaración el día de la vista y junto a su representación legal.[11] El 16 de noviembre de 2022, el DCR le notificó formalmente al recurrente de los cargos en su contra, mediante un *Reporte de Cargos*.[12] En esa misma fecha, el recurrente fue citado para una vista administrativa, la cual se programó para el 12 de diciembre de 2022, al amparo de la Regla 24 del Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional.[13]

Llegado el día de la vista administrativa, la misma se celebró ante una Oficial Examinadora. Allí testificó el Oficial Robles y el recurrente, quien estuvo representado por el licenciado Rolando Nieves Torres. Culminado el proceso y examinado el expediente administrativo, la Oficial Examinadora declaró incurso al recurrente, concluyendo que cometió los actos prohibidos imputados.[14] La sanción impuesta fue la "privación de los privilegios de recreación activa, actividades especiales, comisaría, visita y cualquier otro privilegio concedido, por un término de noventa (90) días calendarios".[15]

En la *Resolución* emitida, la Oficial Examinadora emitió las siguientes determinaciones de hechos:

---

[9] Véase expediente administrativo de la Querella Disciplinaria Núm. 215-22-085 a la pág. 22.
[10] *Id.*, a la pág. 23.
[11] *Id.*, a la pág. 24.
[12] *Id.*, a la pág. 25.
[13] *Id.*, a la pág. 26.
[14] *Id.*, a las págs. 29-31.
[15] *Id.*

1. El 8 de noviembre de 2022 alrededor de las 10:30 A.M., se realizó un registro en la vivienda 2I de la Institución Bayamón 501.
2. La unidad Canina participó del registro.
3. El oficial Albert Robles Cruz registró la celda 214 que pertenece al Querellado Santana.
4. El Oficial Yaremid Serano Avilés estuvo presente mientras se registró la celda 214 del Querellado.
5. El registro se realizó en presencia del Querellado.
6. El Oficial Robles encontró en la celda del Querellado un portafolios que contenía un teléfono celular marca LG, color gris y negro.
7. El celular tiene número de serie 810VTMU475971 y batería Li-ion (BL-45FIF) TYP2500.
8. El Oficial ocupó dos potes de bebida, uno de (Ensure) y un pote de bebida (Boost).
9. Los potes contenían líquido blanco mal oliente.
10. El envase de Ensure contenía cinco cargadores de teléfono de fabricación casera.
11. El envase de Boost contenía dos bolsas de sustancia controlada.
12. El portafolios y los envases estaban dentro de un cajón plástico color verde.
13. El Querellado Santana identificó el cajón plástico verde como su propiedad.
14. El Querellado identificó su propiedad en presencia del Oficial Serrano y el Oficial Robles.
15. La evidencia fue fotografiada.
16. La Policía de Puerto Rico realizó prueba de campo a la sustancia ocupada con resultado positivo a Heroína.
17. Los oficiales Serrano y Robles y el Querellado Santana estuvieron presentes en la División de Drogas Metropolitano mientras se realizó la prueba de campo.
18. El 10 de noviembre de 2022, se radicó un Informe de Querella de Incidente Disciplinario en el cual se le imputa al Querellado Santana la violación de los Códigos 106, 108, 129, 130.
19. El 15 de noviembre de 2022 el Querellado en declaración escrita notificó que declararía en vista, junto a su abogado.
20. El 12 de diciembre de 2022 se celebró la vista disciplinaria a la cual compareció el Querellado.
21. El Querellado compareció representado por el Lcdo. Rolando Nieves Torres, RUA 22268.
22. Durante la vista disciplinaria el Oficial Albert Robles y el Querellado Eliezer Santana prestaron testimonio bajo juramento.
23. El Lcdo. Nieves interrogó al Querellante Robles.
24. Declaró que no recuerda si devolvió el portafolios al Querellado.
25. Declaró que el Querellado no le dijo que tenía abogado cuando se realizó el registro.
26. El Querellado Santana fue interrogado por el Lcdo. Nieves.
27. El Querellado declaró que estaba bajo efectos de medicamentos recetados mientras se realizó el registro.
28. Mostró un documento emitido por Correctional Health con fecha de 9 de julio de 2014.

29. Declaró que durante el registro notificó a los oficiales que estaba representado por abogado.
30. Declaró que cuando la unidad canina registró estaba de espalda a su celda.
31. El Querellado planteó que fue sancionado previo a la celebración de vista disciplinaria, fue ubicado en segregación.
32. El Lcdo. Nieves argumentó que no existía cadena de evidencia, porque el oficial devolvió el portafolios y el cajón donde se encontró la evidencia el Querellado. Además, arguyó que toda aceptación del Querellado luego de notificar a los oficiales que estaba legalmente representado, no se podía considerar por constituir fruto del árbol ponzoñoso.[16]

Inconforme, el 15 de diciembre de 2022, el recurrente presentó una *Solicitud de Reconsideración de Decisión de Informe Disciplinario para Confinado*, alegando que: (i) fue sancionado previo a una vista por ser relocalizado al área de segregación; (ii) el día del registro, los oficiales correccionales les ordenaron bajar al primer piso y sentarse mirando a la pared mientras inspeccionaban las celdas; (iii) la unidad canina no detectó nada "anormal" en su celda antes del registro realizado por los oficiales correccionales; (iv) que una (1) hora y diez (10) minutos más tarde le ordenaron volver a la celda para inspeccionarla frente a él; (v) durante el registro notificó tener abogado y estar sedado cuando admitió que lo ocupado le pertenecía; y, (vi) que no se preservó la cadena de evidencia por habérsele devuelto el portafolio donde se encontró el teléfono celular y el cajón donde se encontraron los potes de bebidas con las sustancias y cargadores.[17] Del Expediente Administrativo surge una *Hoja de Trámite* del 10 de enero de 2023, la cual indica que que la Oficial Examinadora "rechazó de plano" la solicitud de reconsideración.[18] Destacamos que dicho documento no constituye una *Resolución,* sino más bien, un trámite que surge del expediente administrativo y en el cual se hizo constar trámites relacionados a

---

[16] *Id.*, a las págs. 30-31.
[17] *Id.*, a las págs. 32-36.
[18] *Id.*, a la pág. 38.

varios casos ante la Oficial Examinadora.[19] No obra en autos que el DCR hubiese actuado sobre la solicitud de reconsideración.

Inconforme, el 17 de febrero de 2023, el recurrente presentó ante esta Curia un recurso de *Revisión Judicial.* En la misma fecha en que el señor Santana Báez presentó el recurso de revisión, también presentó un escrito[20] en el que alegó, en síntesis, que no pudo presentar el recurso de autos en término por haber estado hospitalizado.[21] El recurrente presentó copia de un documento, el cual contiene la fecha de admisión, no así la del alta del hospital.

En el recurso presentado, el recurrente alegó la comisión de los siguientes cuatro (4) errores por parte del DCR:

A. Erró el DCR al validar un proceso donde se rompe con la preservación de la cadena de evidencia, al devolv[é]rsela al mismo imputado de nuevo, el portafolio y cajón que contenía el alegado contrabando, y considerar que ello no rompe con el resguardo de la cadena de evidencia que se debe preservar para todo tipo de procesos como éste, y decidieron no traer al Agte. Agront – químico foren[s]e – que realizó la prueba de campo para interrogarlo.

B. Incidió en error extraordinario el DCR al dar por v[á]lido el proceso seguido en [e]ste caso sin garantizar las garantías constitucionales de estar asistido de abogado, cuando dicha garantía es invocada desde el momento de los hechos, y así aún, proceder a tomar una declaración por encima de dicha garantía, cuando la [C]onstitución garantiza dicha representación cuando en la etapa investigativa cuando esta toma car[á]cter acusatorio y [e]ste derecho me lo reconoce el reglamento. Art. II, sec. II Const. del E.L.A. de P.R.

C. Erró el DCR al no invalidar la admisión y declarar nulo el proceso seguido contra el recurrente al considerar que el recurrente estaba [s]edado con medicamentos clínicamente aprobados por los doctores y [e]sta [C]uria en KLRA2020-00036 y restarle validez a dicha [s]edación sin corroborar y entrevistar a la doctora que atiende al recurrente la cu[a]l estaba ahí al momento de la vista en su consultorio atendiendo pacientes, y

---

[19] *Id.*

[20] Moción [a]l [a]mparo de la Regla 30.1 A y B del Reglamento del Tribunal de Apelaciones, presentado el 17 de febrero de 2020.

[21] El recurso no cuenta con una fecha en que el mismo fue firmado por el recurrente. Lo que sí obra en autos es un sobre en el cual se envió el recurso para su radicación ante esta Curia, entiéndase el 14 de febrero de 2023.

sin la opinión pericial al respecto y sin la persona perito de ocurrencia testificar se da por inv[á]lido [e]se argumento.

D. Erró el DCR al emitir una sanción de mantener en segregación administrativa al recurrente, cuando [e]sa, la decisión de segregar, es una sanción que debe emitir la oficial examinadora luego de un proceso de vista en su fondo, y sin ello, desde el momento de los hechos, removieron al recurrente al [á]rea de segregación como sanción, a criterio propio del personal institucional, y la examinadora, por vez primera, en su resolución es que nos dice que ello no fu[e] por sanci[ó]n, sino como medida de seguridad lo ordenó el comandante porque la vida del recurrente corría peligro por la gran cantidad de heroína que se me ocupó, <dos (2) Decks>.

Recibido el recurso de revisión y, mediante *Resolución* del 10 de marzo de 2023, se concedió término al recurrente para someter, debidamente cumplimentada y firmada, la solicitud para litigar en forma *pauperis* o en su defecto, los aranceles correspondientes para la presentación del recurso, conforme a la Regla 78 del Reglamento del Tribunal de Apelaciones.[22] A esos fines, se ordenó a la Secretaría enviar al recurrente el formulario *OAT-1480 – Solicitud y Declaración para que se exima de pago de Arancel por Razón de Indigencia.* El recurrente fue apercibido que, de incumplir, se exponía a la desestimación del presente recurso, sin más oírle al respecto.

En la referida *Resolución*, también se le ordenó al recurrente presentar el apéndice del recurso presentado, pero, en específico, debía incluir, además, la copia de la *Resolución* recurrida, copia de la moción de reconsideración que el recurrente alegó haber presentado el 15 de diciembre de 2022, así como la determinación, de existir. El recurrente fue apercibido que, por ser los documentos unos esenciales para acreditar nuestra jurisdicción, de no presentarlos en el término provisto, el caso podía ser desestimado. Así las cosas, decursado el término que le fue concedido sin haberse presentado lo requerido, esta Curia, mediante *Sentencia* emitida el

---

[22] Regla 78 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

28 de marzo de 2023, desestimó el recurso instado por falta de jurisdicción, puesto que el recurso no quedó perfeccionado.

En lo atinente, el 21 de abril de 2023, el recurrente presentó una *Reconsideración*. Junto a la misma acompañó una *Moción Informativa*, a través de la cual notificó que, el 12 de abril de 2023, el TPI emitió *Sentencia* desestimando los cargos criminales que en este caso pesaban contra el recurrente. Examinada la misma y mediante *Resolución* emitida el 3 de mayo de 2023, se declaró *Ha Lugar* la solicitud de *Reconsideración,* y en su consecuencia, se dejó sin efecto la *Sentencia* previamente emitida, mientras que, al día siguiente, se autorizó al recurrente a litigar en este caso como indigente y se concedió término al DCR para elevar copia certificada del expediente administrativo correspondiente a la Querella Número 215-22-085. De igual forma, el 4 de mayo de 2023, también se concedió término a la parte recurrida para presentar su alegato, término del cual fue relevado, mediante *Resolución* emitida el 10 de mayo de 2023. El 15 de mayo de 2023, El DCR, a través de una *Moción en Cumplimiento de Resolución,* presentó copia del expediente administrativo del caso.

De ahí, mediante *Resoluciones* emitidas el 9 de junio de 2023 y, posteriormente, el 21 de junio de 2023, se concedió término al DCR para expresarse en torno al recurso presentado. El 27 de junio de 2023, el DCR, representado por la Oficina del Procurador General de Puerto Rico, presentó su *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación.* En su escrito, adujo que el recurso debía ser desestimado por falta de jurisdicción, arguyendo que el mismo fue presentado tardíamente y en la alternativa, que confirmáramos el dictamen recurrido.

Habiendo comparecido las partes y presentado sus respectivos escritos, exponemos el derecho aplicable.

## II

### A. Revisión Judicial

El artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[23] otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[24] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[25] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina.[26] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y, (iii) la revisión completa de las conclusiones de derecho.[27]

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[28]

Dentro de este marco, nuestro Tribunal Supremo ha reiterado que los tribunales apelativos, al ejercer su función revisora, deben

---

[23] Ley Núm. 201-2003 (4 LPRA sec. 24y(c)).
[24] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014).
[25] *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011). *Empresas Ferré v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[26] *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018).
[27] *Batista, Nobre v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279-280 (1999).
[28] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24 (1996).

conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[29] Por un lado, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente.[30]

Igualmente, las determinaciones de los entes administrativos tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas.[31] A la luz de esto, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[32] Ahora bien, esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[33]

El Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[34] La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una

---

[29] *Rolón Martínez v. Caldero López*, supra. *Asoc. Fcias. v. Caribe Specialty et al. II.*, supra, 940.
[30] *Id.*
[31] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[32] *Id.*
[33] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a Empresas Ferrer v. A.R.Pe., supra.
[34] *Batista, Nobre v. Jta. Directores,* supra, 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011). *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999).

conclusión".[35] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[36] Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[37] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos y no los tribunales.[38]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[39] Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[40]

Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo.[41] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[42] De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la

---

[35] *Id. Otero v. Toyota*, 163 DPR 716, 728 (2005).

[36] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).

[37] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).

[38] *OCS v. Triple-S*, 191 DPR 536, 554 (2014). Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

[39] *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

[40] *Gutiérrez Vázquez v. Hernández*, 172 DPR 232, 245 (2007).

[41] *Otero v. Toyota*, supra.

[42] *García Reyes v. Cruz Auto corp.*, supra, 894.

experiencia de la agencia con respecto a las leyes y reglamentos que administra.[43] Así pues, si el punto de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación.[44]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[45] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[46]

### B. Falta de Jurisdicción

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver las controversias presentadas ante su consideración.[47] Los tribunales adquieren jurisdicción por virtud de ley, por lo que no pueden arrogársela ni las partes pueden otorgársela.[48] Es norma reiterada en nuestro ordenamiento, que: "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen".[49] Es norma reconocida que las cuestiones relativas a la jurisdicción de los tribunales para atender los recursos ante su consideración constituyen materia privilegiada.[50] De manera que, debido a su naturaleza privilegiada, las cuestiones de jurisdicción

---

[43] *Asoc. Vec. de H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[44] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[45] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007). *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[46] *Cruz v. Administración*, 164 DPR 341, 357 (2005).
[47] *Beltrán Cintrón v. ELA*, 204 DPR 89 (2020). *Torres Alvarado v Madera Atiles*, 202 DPR 495 (2019). *AAA v. Unión Independiente Auténtica de Empleados de la AAA*, 199 DPR 638, 651-52 (2018).
[48] *Ríos Martínez, Com. Alt. PNP v. CLE*, 196 DPR 289, 296 (2016).
[49] *Torres Alvarado v Madera Atiles*, supra, 500. *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012). *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007). *Ríos Martínez, Com. Alt. PNP v. CLE*, supra.
[50] *AAA v. Unión Abo. AAA*, 158 DPR 273, 279 (2002).

deben ser resueltas con preferencia, ya sea porque fuera cuestionada o motu proprio, pues, por su naturaleza, incide directamente sobre el poder que tiene para adjudicar las controversias.[51]

La Alta Curia ha dispuesto que, para que un recurso quede perfeccionado es necesaria su oportuna presentación y notificación del escrito a las partes apeladas.[52] Por tal motivo, cuando un tribunal carece de jurisdicción, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[53] De lo contrario, cualquier dictamen en los méritos será nulo y, por ser ultra vires, no se puede ejecutar.[54] Es decir, una sentencia dictada sin jurisdicción por un tribunal, es una sentencia nula en derecho y, por lo tanto, inexistente.[55]

Una de las instancias en que un tribunal carece de jurisdicción es cuando se presenta un recurso tardíamente. Lo anterior, debido a que, un recurso tardío adolece del grave e insubsanable defecto de falta de jurisdicción.[56] Su presentación carece de eficacia y como consecuencia no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo.[57]

Un recurso de revisión tardío es aquel que se presenta fuera del término disponible para ello, y que, consecuentemente, manifiesta la ausencia de jurisdicción.[58] Desestimar un recurso por

---

[51] *Allied Management Group, Inc. v Oriental Bank*, 204 DPR 374 (2020). *Torres Alvarado v Madera Atiles*, supra. *Ruiz Camilo v. Trafon Group Inc.,* 200 DPR 254, 268 (2018). *Fuentes Bonilla v. ELA*, 200 DPR 364, 372 (2018).
[52] *González Pagán v. Moret Guevara*, 202 DPR 1062, 1070-1071 (2019).
[53] 4 LPRA Ap. XXII-B, R. 83. *Autoridad para el Financiamiento de la Infraestructura de Puerto Rico v. Carrión Marrero*, 209 DPR 1 (2022). *Yumac Home Furniture v. Caguas Lumber Yard*, 194 DPR 96, 107 (2015).
[54] *Bco. Santander v. Correa García*, 196 DPR 452, 470 (2016). *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007).
[55] *Montañez v. Policía de Puerto Rico*, 150 DPR 917, 921-922 (2000).
[56] *MMR Supermarket, Inc. v. Municipio Autónomo de San Lorenzo*, 210 DPR 271 (2022). *Autoridad para el Financiamiento de la Infraestructura de Puerto Rico v. Carrión Marrero*, supra. *Yumac Home Furniture v. Caguas Lumber Yard*, supra.
[57] *MMR Supermarket, Inc. v. Municipio Autónomo de San Lorenzo, Id. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico v. Carrión Marrero, Id.*
[58] *MMR Supermarket, Inc. v. Municipio Autónomo de San Lorenzo, Id.*

ser tardío priva fatalmente a la parte de presentarlo nuevamente, ante ese mismo foro, o ante cualquier otro.[59]

Cónsono con lo anterior, la Regla 83 del Reglamento del Tribunal de Apelaciones[60], confiere facultad a este Tribunal para a iniciativa propia o a petición de parte desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

**III**

Expuesto el marco teórico en derecho, procedemos a resolver, en consideración al mismo. El recurrente esgrimió cuatro (4) errores en su recurso de *Revisión Judicial*. Sin embargo, como cuestión de umbral, antes de entrar a los méritos del recurso mediante la discusión de los errores señalados, debemos atender el aspecto jurisdiccional. Sabido es que, la Ley de Procedimiento Administrativo Uniforme de Puerto Rico (LPAU)[61], así como nuestro Reglamento[62], nos facultan para revisar las decisiones, resoluciones y providencias finales dictadas por organismos o agencias administrativas en sus funciones adjudicativas delegadas.

El Tribunal Supremo ha reiterado que el aspecto jurisdiccional es el primer factor por considerar en toda situación jurídica que se presente ante un foro adjudicativo.[63] Esto se debe a que los tribunales tienen la responsabilidad indelegable de examinar, en primera instancia, su propia jurisdicción, así como la del foro de donde procede el recurso ante su consideración.[64] **Si el tribunal no tiene jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la**

---

[59] *Yumac Home Furniture v. Caguas Lumber Yard*, supra.
[60] 4 LPRA Ap. XXII-B, R. 83.
[61] 4LPRA 24.
[62] 4 LPRA Ap. XX-B, R. 56
[63] *MMR Supermarket, Inc. v. Municipio Autónomo de San Lorenzo*, supra. *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 500 (2019).
[64] Torres Alvarado, *Id. Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018). *Cordero et al. v. ARPe et al.*, 187 DPR 445, 457 (2012). *S.L.G. Szendrey-Ramos v. F. Castillo*, supra, 883.

**controversia**.[65] (Énfasis suplido). Es decir, procede la inmediata desestimación del recurso apelativo según lo dispuesto en las leyes y los reglamentos para el perfeccionamiento de estos recursos.[66]

Así, un minucioso examen del recurso de *Revisión Judicial* que nos ocupa, incluyendo la revisión de los documentos provistos por el recurrente, así como el expediente administrativo presentado por el DCR, inmediatamente revelan que este no cumple con los requisitos exigidos por nuestro ordenamiento jurídico para entender que tenemos jurisdicción para atenderlo. Esta situación, definitivamente, impide el ejercicio de nuestra facultad revisora. Indubitadamente se desprende, que nos encontramos impedidos de atender el recurso en cuestión porque el mismo fue presentado tardíamente. Este recurso fue radicado fuera del término de treinta (30) días dispuesto para ello. Este defecto procesal tiene la irremediable consecuencia de impedir que podamos ejercer nuestra función revisora. En la primera ocasión, vía *Reconsideración,* esta Curia le concedió una oportunidad al recurrente para que presentara el apéndice y otros documentos requeridos. En la ocasión que nos ocupa, al evaluar el apéndice presentado, así como el expediente administrativo, no podemos llegar a otra conclusión que no sea que el recurso se presentó tardíamente. La falta de un perfeccionamiento adecuado del recurso de *Revisión Administrativa* incide directamente en nuestra autoridad y jurisdicción para atenderlo. Siendo ello así, y a la luz de la normativa antes expuesta, queda claro que carecemos de autoridad para adjudicar la controversia traída ante nuestra consideración. Nos explicamos.

---

[65] Torres Alvarado, *Id.*, 501. *Ruiz Camilo v. Trafon Group, Inc.*, *Id.*, 269. *Mun. de San Sebastián v. QMC Telecom,* 190 DPR 652, 660 (2014).
[66] Torres Alvarado, *Id. Ruiz Camilo v. Trafon Group, Inc., Id. S.L.G. Szendrey-Ramos v. F. Castillo,* supra.

Surge de los documentos sometidos a nuestra consideración que el recurrente solicitó la revisión de la *Resolución* emitida el 15 de diciembre de 2022. Sobre dicha *Resolución,* el recurrente presentó una *Solicitud de Reconsideración de Decisión de Informe Disciplinario para Confinado* en esa misma fecha. Distinto a lo expresado en su escrito por el DCR, por conducto de la Oficina del Procurador General, la solicitud de reconsideración no fue rechazada de plano, más bien, no fue considerada. Insistimos, lo que surge del Expediente Administrativo es una Hoja de Trámite[67] que de ninguna forma constituye un documento oficial que puede activar término alguno en este proceso. Así pues, y conforme al derecho antes esbozado, dada la inacción del antedicho organismo en cuanto a la reconsideración en cuestión dentro del término dispuesto para ello, comenzó a decursar el periodo de treinta (30) días jurisdiccionales para que el recurrente acudiera ante este Tribunal mediante la presentación de su recurso de revisión administrativa. No obstante, habiendo acudido ante nos el 17 de febrero de 2023, pero aún, tomando en consideración que el documento presentado por el Procurador General revela que el recurrente entregó el recurso para su radicación el 13 de febrero de 2023[68], precisa resolver que su comparecencia fue una tardía. Siendo así, carecemos de jurisdicción para atender la controversia que propone.

**IV**

Por los fundamentos que anteceden, se desestima el recurso por falta de jurisdicción.

---

[67] Véase expediente administrativo de la Querella Disciplinaria Núm. 215-22-085 a la pág. 38.
[68] Véase Anejo 1 del *Escrito en Cumplimiento de Resolución* presentado por el DCR, por conducto de la Oficina del Procurador General.

Notifíquese al DCR, quien deberá entregar copia de esta *Resolución* al confinado, en cualquier institución donde se encuentre.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Lebrón Nieves concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones