Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII[1]

| | | |
|---|---|---|
| ELIEZER SANTANA BÁEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurridos | KLRA202500133 | ***Revisión Administrativa***<br>Procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>B-1443-24<br><br><br>Sobre:<br>PROGRAMA DE DESVÍO |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de mayo de 2025.

El recurrente, señor Eliezer Santana Báez presenta un recurso de revisión administrativo. En el mismo, solicita la revocación de la resolución emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación, en adelante DCR. Por los fundamentos que exponemos adelante desestimamos el recurso por falta de jurisdicción. Los hechos pertinentes para comprender nuestra determinación se detallan a continuación.

Según alega el recurrente en su escrito, el 25 de septiembre de 2024, el Comité de Clasificación y Comportamiento (CCT) lo refirió para el programa de desvió con instrucciones de evaluar todos los programas disponibles. Sostiene que la Trabajadora Social no lo refirió para el programa de pases y desvío aun cuando cumple con todos los requisitos para beneficiarse de estos. Por no conocer si la Trabajadora Social lo engañó y no presentó ninguna solicitud al

[1] Mediante Orden Administrativa OATA-2025-035 se modificó la composición del Panel.

Número Identificador

SEN2025_____

programa o si habiéndolo sometido, estaba mal hecha la solicitud o el Comité de Clasificación y Tratamiento (CCT), simplemente, no actuaba, decidió presentar la solicitud de remedio administrativo que nos ocupa.

Así las cosas, afirma en su escrito que el CCT le indicó que una vez llegara la respuesta del programa de desvío le notificarían para indicarle los programas disponibles. Sobre los pases que, son parte del programa y, a él le interesan, por igual, relato que, le indicaron que las instrucciones eran que se evaluaría el expediente social completo y se discutiría con el supervisor del área socio penal. Además, le informaron que aún no se había evaluado el mismo, indicando, que de resultar favorable la evaluación se le llenaría documento para presentarlo al CCT y solicitar investigación para posible pase familiar. Inconforme, asevera que es inconcebible que el recurrido continúe diciendo lo mismo, a pesar de sus reclamos y del tiempo que ha transcurrido. Que sigan diciendo lo mismo, "que hay que evaluar su expediente detenidamente, que hay que seguir investigando."

En su escrito el recurrente presenta un señalamiento de error, este es; que erro el DCR al no cumplir con las disposiciones del reglamento de desvió y realizar determinaciones que no están fundamentadas en evidencia sustancial del récord social mismo. Abunda en que la evidencia sustancial es aquella que una mente razonable puede aceptar como adecuada para sostener una conclusión de hechos y la correspondiente conclusión de derechos según *Ramírez v Depto. De Salud*, 147 DPR 905 (1999). Esa prueba sustancial requiere del foro apelativo la revisión de la totalidad del expediente en búsqueda de esta.

Para el recurrente las respuestas de la agencia son contrarias a su propio reglamento de programas y a la prueba documental que obra en el expediente administrativo. A su entender, es innecesaria

cualquier evaluación adicional pues existen escritos, hay meses de dialogo que demuestran que existe evaluación. Así dice que existe prueba que ha cumplido con: a) recibir las terapias de aprendiendo a vivir sin violencia, b) no cuenta con orden de arresto o *detainer*, c) no ha sido objeto de querellas, ni de actos de indisciplina, d) posee múltiples reconocimientos que acreditan su ajuste institucional d) salud correccional lo evaluó concluyendo que no ameritaba tratamiento, e) actualmente está ubicado en custodia mínima, f) tiene amigo consejero, g) cuenta con múltiples certificados de participación, reconocimientos y recomendaciones que acreditan su excelente ajuste institucional. Destacó que estando en custodia mediana tuvo oportunidad de asistir a su iglesia, mediante pases, en Naranjito, sin que ocurriese ningún inconveniente. Sostiene que ha estado 21 años y medio confinado y nunca ha tenido el privilegio de estar en algún programa.

Entonces y en apretada síntesis el recurrente sostiene que los criterios para referirlo al programa ya son parte del expediente y le favorecen y que no hay necesidad de hacer más estudios o evaluaciones para evaluarlo para un programa de desvió o pases. Por último, comparte que le ha cogido un odio horrible a la trabajadora social porque se le está riendo en la cara. Precisa que es más embustera que Hermes y Phisicional.

Por su parte, el DCR compareció representado por la Oficina del Procurador General mediante Escrito en Cumplimiento de Resolución y Solicitud de Desestimación. Nos indica que al momento del recurrente presentar el recurso ante este foro, ya había sido notificado de la Resolución de los Programas de Desvió Comunitarios que denegó su participación en los programas de Pase Extendido con Monitoreo Electrónico, y los programas Religiosos y Seculares. Detalla el tracto procesal de la querella administrativa presentada por el recurrente y que sostiene su argumento de que el

recurso es académico. Así específica que, el 25 de septiembre de 2024 el CCT refirió el caso del recurrente para los programas de desvío. El 14 de octubre Santana Báez presentó una Solicitud de Remedio Administrativo en donde solicitó que se le dijera si se había analizado su expediente o se le informara de no haberlo hecho y se lo enviarán a la división de programas de nivel central. El 15 de noviembre de 2024, notificada el 3 de diciembre del mismo año, se le informó que el caso había sido visto en el CCT para referirlo a los programas de desvío. En cuanto a los pases familiares se le orientó que el proceso exigía la evaluación del expediente completo y posterior discusión con el supervisor del área socio penal. Se le dejó saber que todavía no se había evaluado el expediente pero que una vez se hiciera y de resultar favorable se presentaría en CCT para posible pase familiar sujeto a la evaluación de criterios como áreas, distancias, partes perjudicadas y otros. Inconforme con la contestación el recurrente presentó una Solicitud de Reconsideración reiterando los argumentos ya planteados, básicamente que se analizara su caso y se le diera una respuesta. Acogida la reconsideración el 9 de enero de 2025, el 6 de febrero de 2025, notificada el 14 de febrero emitió una Resolución en la cual se confirmó y amplio la respuesta de la División de Remedios Administrativos. A tales efectos se le especifico que en su caso por haber víctimas había que referirlo al Programa de Comunidad para investigación conforme los reglamentos y leyes vigentes. El 13 de febrero de 2025, notificada el 14 la Oficina de Desvío y Comunitarios evaluó el caso del recurrente y denegó la participación en los programas de desvió. Se le informó que no cualificaba en virtud de lo expuesto en la Ley de 26 de mayo de 1995.[2] Además se explicó

---

[2] "Artículo 10-A.- No serán elegibles para participar en los programas de desvío o tratamiento y rehabilitación establecidos por la Administración de conformidad con las facultades que le confiere esta Ley, ni en el Programa de Hogares de Adaptación Social, las siguientes personas:

que conforme el Plan de Reorganización del DCR, #2 del 21 de noviembre de 2011, artículo 16[3], según enmendado se excluía el Programa de Desvío el delito de Asesinato en Primer Grado y conforme al Reglamento 9488, Art. VII, inciso 1-d no cualificaba. Inconforme con la denegatoria el 18 de febrero de 2025 recibido el 28 del mismo mes y año presento el recurso que nos ocupa.

El DCR sostiene que la petición del recurrente se ha tornado académica toda vez que el 18 de febrero de 2025 luego de evaluar su caso, lo cual fue su petición, le fue denegada su participación en los Programas de Pase Extendido con Monitoreo Electrónico y los Programas religiosos y Seculares por las razones antes señaladas.

I

La jurisdicción es el poder o autoridad de los tribunales para considerar y decidir casos y controversias. *Beltrán Cintrón v. Estado libre Asociado de Puerto Rico,* 204 DPR 89, 100 (2020). Como asunto de umbral los tribunales deben evaluar si ostentan jurisdicción. Esta norma aplica al Tribunal de Primera Instancia y a los foros apelativos y debe ser cumplida, aunque ninguna de las partes haya planteado la falta de jurisdicción. Cuando un tribunal determina que no tiene jurisdicción está obligado a ordenar la desestimación. *Yumac Home v. Empresas Massó,* 194 DPR 96, 103 (2015); *Horizon Media v. Jta. Revisora RA Holdings,* 191 DPR 228, 233-234 (2014), 122-123 (2012); *Municipio de San Sebastián v. QMC,* 190 DPR 652, 660 (2014); *Shell Chemicall v. Srio. Hacienda,* 187 DPR 109, 122 (2012).

---

a. Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:
(1) asesinato; violación; incesto; sodomía o actos lascivos o impúdicos cuando la víctima fuera menor de catorce (14) años; … Ley 49 de 26 de mayo de 1995.

[3] No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas: a) toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:
…
4) toda persona convicta por delito grave de primer grado.
… 3 LPRA, Ap. XVIII, Art. 16.

La intervención de los tribunales está limitada a resolver controversias reales y definidas que afecten las relaciones jurídicas de partes antagónicas u opuestas. El principio de justiciabilidad impide que los tribunales atiendan controversias de carácter hipotético, abstracto o ficticio. La academicidad es una manifestación del principio de justiciabilidad. *Super Aspalt Pavement Corp., v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico*, 206 DPR 803, 815 (2021); *UPR v. Laborde Torres,* 180 DPR 253, 280 (2010).

La doctrina de academicidad ampara la situación en que, aun cumplidos todos los criterios de justiciabilidad, ocurren cambios en los hechos o el derecho durante el trámite judicial que tornan académica o ficticia la solución del pleito. *UPR v. Laborde Torres* , supra; *El Vocero v. Junta de Planificación,* 121 DPR 115, 123 (1988); *Com. de la Mujer v. Srio. de Justicia,* 109 DPR 715, 724 (1980). Esta doctrina persigue: (1) evitar el uso innecesario de los recursos judiciales; (2) asegurar que haya la adversidad suficiente para que las controversias se presenten y defiendan competente y vigorosamente, y (3) evitar precedentes innecesarios. *Com. de la Mujer v. Srio. de Justicia,* supra, pág. 725.

En fin, un caso es académico cuando se trata de obtener un fallo sobre una controversia inexistente, o una sentencia sobre un asunto que por alguna razón no podrá tener efectos prácticos. *Bhatia Gautier v. Gobernador et al,* 199 DPR 59, 73 (2017); *UPR v. Laborde Torres,* supra, pág. 280. La academicidad incluye situaciones en la que se han cumplido todos los criterios de justiciablidad, pero durante el trámite judicial ocurren cambios en los hechos o el derecho que tornan académica o ficticia la solución del pleito. *UPR v. Laborde Torres,* supra, pág. 280. Ahora bien, la

norma no es absoluta, la doctrina de academicidad tiene sus excepciones y son las siguientes: (1) existe una cuestión recurrente o susceptible de volver a ocurrir, (2) la situación de hechos ha sido cambiada por el demandado, pero no tiene visos de permanencia, (3) subsisten consecuencias colaterales que tienen vigencia y actualidad. *Bhatia Gautier v. Gobernador et al*, supra, pág. 75; *UPR v. Laborde Torres,* supra, pág. 281.

De manera que al analizar si un caso es académico, debemos evaluar los eventos anteriores, próximos y futuros, a fines de determinar si la controversia entre las partes sigue viva y subsisten con el tiempo. Una vez se determina que un pleito es académico, los tribunales están impedidos de considerarlo en sus méritos. *Bhatia Gautier v. Gobernador et al*, supra, pág. 281.

Por otro lado, la Regla 83 (B) del Reglamento del Tribunal de Apelaciones, 4 LPRA XXII-B, R. 83, nos faculta a desestimar un recurso a solicitud de parte por falta de jurisdicción y academicidad. El inciso C nos permite hacerlo a iniciativa propia.

## II

El DCR ha presentado prueba que demuestra que el recurso es académico. El recurrente suplicó en su escrito que ordenáramos a DCR evaluar su caso conforme Ley y Reglamento con la intención de que se le conceda el beneficio de un programa de desvío.  Su inconformidad se acrecentaba ante el tiempo que le estaba tomando al DCR evaluar su situación.  No obstante, y conforme advirtiera el DCR a la fecha en que Santana Báez presentó el recurso ante este foro ya que el departamento había evaluado la situación específica del recurrente y le había denegado la participación del programa en cumplimiento con la Ley y la reglamentación.

La controversia es académica, no es necesario ordenarle al DCR evaluar el expediente de Santana Báez porque eso ya pasó. Nuestra Sentencia, si concediéramos el remedio solicitado por

Santana Báez no tendría efecto alguno pues ya se completó la evaluación para los programas de desvío y se le explicó porque no cualifica. Por otro lado, hay una ausencia total de las excepciones que nos permitan asumir jurisdicción. Por lo que debido a la falta de caso y controversia estamos obligados a ordenar la desestimación.

**III**

Por los fundamentos antes expuestos, se desestima el recurso por falta de jurisdicción, por academicidad.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones