ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| WEST COAST CAPITAL, LLC<br><br>Recurrida<br><br>v.<br><br>RIO CAÑAS, S.E. *ET ALS*<br><br>Peticionarios | **TA2025CE00918** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Mayagüez<br><br>Civil Núm.: ISCI201301406<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico a 16 de enero de 2026.

Comparecen ante este foro la Sra. Zulma A. Vilella García, Zulma López Vilella, María Angela López Vilella y Carlos Juan López Vilella (Sucesión López o "los peticionarios") y nos solicitan que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, notificada el 11 de septiembre de 2025. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* la *Moción de Nulidad de Subasta Pública y Celebración de Vista Evidenciaria y/o Reconsideración*. Por consiguiente, confirmó la *Orden de Confirmación de Adjudicación o Venta Judicial*.

Por los fundamentos que expondremos a continuación, **DESESTIMAMOS** el recurso de *certiorari* por carecer de jurisdicción.

### I.

El 10 de octubre de 2013, PR Asset Portfolio 2013-1 International, LLC (PRAPI), presentó una *Demanda* sobre

cobro de dinero y ejecución de hipoteca en contra de Río Cañas, S.E.; Río Cañas Management & Development, Inc.; Mario S. Rodriguez González y su esposa María De Lourdes Miranda, y la Sociedad Legal de Gananciales compuesta por ambos; Francisco Córdova López y su esposa Julia Evelyn Marrero Rolón, y la Sociedad Legal de Gananciales compuesta por ambos; Eric Conde Lespier y su esposa Natalia Guanipa Sánchez, y la Sociedad Legal de Gananciales compuesta por ambos; Zulma Antonia Vilella; Sucesión De Carlos Manuel Lopez Rivera, compuesta por John Doe y Jane Doe por desconocerse a su nombre como posibles miembros de la Sucesión y Zulma Antonia Vilella en su cuota viudal usufructuaria; y, el Secretario de Hacienda de Puerto Rico. En esencia, alegó que Banco Popular de Puerto Rico (BPPR) le concedió a Río Cañas S.E. un préstamo comercial el cual estaba garantizado solidariamente por todos los demandados, sobre una propiedad ubicada en el Municipio de Añasco.[1] Asimismo, indicó que BPPR suscribió un acuerdo mediante el cual le cedió todo su interés como acreedor del préstamo comercial en controversia. Por lo tanto, sostuvo que, de manera solidaria, le adeudaban las siguientes cantidades, las cuales eran líquidas y exigibles: $428,588.03 de principal más intereses y $50,000.00 por concepto de costas, gastos y honorarios de abogado.

El 12 de mayo de 2014, PRAPI presentó una *Moción Solicitando Anotación de Rebeldía*. Alegó que, luego de realizar los emplazamientos, las partes demandadas no habían hecho alegación responsiva a la demanda a pesar

---

[1] PRAPI señaló que el señor Carlos M. López Rivera había fallecido, por lo que, incluyeron a la sucesión del causante, entre ellos, los peticionarios del caso de autos.

de haber expirado el término establecido, por lo que procedía la anotación de rebeldía.

Posteriormente, el 28 de mayo de 2014, PRAPI presentó una *Moción Bajo la Regla 45.2(b) Solicitando Sentencia en Rebeldía*. Sostuvo que, era la parte tenedora de los pagarés hipotecarios que gravan la propiedad inmueble en controversia. Por consiguiente, solicitó fuera dictada la sentencia en rebeldía.

Así las cosas, el 21 de noviembre de 2014, el foro primario notificó una *Sentencia en Rebeldía*, mediante la cual declaró *Con Lugar* la *Demanda* y, en consecuencia, ordenó a los demandados al pago de manera solidaria de lo reclamado en la demanda.

Luego de varias incidencias procesales, el 27 de junio de 2023, el foro primario emitió una *Orden de Ejecución de Embargo y de Venta Judicial*, sobre la propiedad ubicada en Añasco.

Posteriormente, el 4 de abril de 2024, CPD LLC, como parte demandante, presentó una *Moción de Anotación de Embargo en Ejecución de Sentencia*. En esta, alegó que el foro *a quo* había dictado *Sentencia* en rebeldía, la cual es final, firme e inapelable, sobre una deuda vencida, líquida y exigible y la cual no ha sido satisfecha en su totalidad. Señaló que, la Sucesión López era dueña de un apartamento en el Condominio Villas del Mar en el Municipio de Carolina. Por lo que, con el propósito de recuperar parcial o totalmente la deuda, solicitaba el foro de instancia expidiera una *Anotación de Embargo en Ejecución de Sentencia*.

El 22 de agosto de 2024, CPD, LLC. y West Coast Capital LLC (WCC o "parte recurrida") presentaron una *Moción de Sustitución de Parte Demandante*. Mediante

esta, informaron que WCC había adquirido todo el interés de CPD en la facilidad de crédito sobre el caso, por lo que, habían quedado subrogados en todos los derechos de CPD ante los demandados.

Por consiguiente, el 13 de septiembre de 2024, WCC presentó una *Solicitud de Ejecución de Embargo y Solicitud de orden y Mandamiento de Venta Judicial*. En esta, indicó que el 7 de mayo de 2024, presentaron en el Registro de la Propiedad de Carolina, la *Orden de Anotación de Embargo en Ejecución de Sentencia* y el *Mandamiento de Anotación de Embargo en Ejecución de Sentencia*. Por ello, solicitó se realizara la venta en pública subasta del inmueble embargado en ejecución de Sentencia, ubicado en el Municipio de Carolina.

No obstante, el 17 de septiembre de 2024, el foro de instancia notificó una *Resolución y Orden*, en la cual denegó la solicitud de ejecución de embargo y solicitud de orden y mandamiento de venta judicial. Indicó que, en el caso ya se había llevado a cabo una subasta y se había confirmado la venta judicial.

El 26 de septiembre de 2024, WCC presentó una *Moción de Reconsideración*. Alegó que, luego de emitida la *Sentencia en Rebeldía*, se llevó a cabo la venta judicial de la propiedad ubicada en Añasco. Sin embargo, arguyó que dicha venta judicial no satisfizo en su totalidad la deuda. Por ello, solicitaron una anotación de embargo en ejecución de sentencia por la propiedad ubicada en Carolina. Así pues, solicitaron la ejecución del embargo y solicitud de orden y mandamiento de venta judicial, no obstante, el foro primario la denegó, y por ello, solicitó una reconsideración.

El 8 de noviembre de 2024, el foro de instancia notificó una *Resolución*, en la cual declaró *Con Lugar* la reconsideración de WCC.

El 24 de noviembre de 2024, el foro recurrido emitió una *Orden de Ejecución de Embargo y de Venta Judicial*, sobre la propiedad ubicada en Carolina.

Luego de varias incidencias procesales, el 5 de marzo de 2025, fue emitida por el Alguacil del Tribunal de Primera Instancia de Carolina un *Acta de Subasta*. En esta, informó que luego de iniciado el acto de subasta, WCC ofreció la suma de $125,000.00, y al no haber mejor oferta le fue adjudicada la buena pro del inmueble en abono a la *Sentencia*.

El **25 de marzo de 2025**, el foro recurrido emitió una *Orden de Confirmación de Adjudicación o Venta Judicial*.

El **11 de mayo de 2025**, la Sucesión López presentó *Moción Urgente de Paralización de Procedimiento de Desahucio y Nulidad de Orden de Sentencia, Orden de Embargo y Subasta Pública*. En esencia, señalaron que la parte recurrida tramitó el caso sin realizar las notificaciones y emplazamientos correspondientes. Por consiguiente, que desconocían del procedimiento judicial llevado a cabo. Así pues, alegaron que la sentencia y orden de embargo adolecían de nulidad absoluta.

El **12 de mayo de 2025**, el foro *a quo* notificó una *Resolución*, mediante la cual indicó que la *Sentencia* dictada el 10 de noviembre de 2014 fue notificada por edicto, cumpliendo con las Reglas de Procedimiento Civil. Asimismo, añadió que el caso es uno ordinario de ejecución de hipoteca, radicado desde el año 2013, por lo que no aplican las disposiciones del Código de

Enjuiciamiento Civil. Por ello, declaró *No Ha Lugar* a la moción presentada por la parte peticionaria.

En desacuerdo, el **27 de mayo de 2025**, la Sucesión López presentó una *Moción Urgente de Nulidad de Subasta Pública y Celebración de Vista Evidenciaria y/o Reconsideración*. Alegaron que, el 9 de mayo de 2025, recibieron un aviso de lanzamiento, sin embargo, que no recibieron notificación efectiva alguna de que la propiedad había sido subastada y adjudicada. Incluso, esbozaron que, de todas las alegadas cartas enviadas por correo certificado, las cuales fueron devueltas, ninguna fue dirigida a la propia dirección del inmueble subastado, siendo un inmueble residencial. Asimismo, mencionaron que la falta de inclusión de los miembros de la sucesión, al hacer una mera referencia como John y Jane Doe, evidenciaba falta de diligencia.

De otra parte, los peticionarios manifestaron que la subasta sobre el inmueble en Carolina era nula porque no existía deuda exigible alguna. Sostuvieron que, la venta judicial sobre la finca en Añasco había satisfecho la totalidad de la deuda exigible, e incluso había sobrepasado la misma. Añadieron que, la deuda ascendía a $558,153.30, y la parte demandante en su momento, CPC LLC, ofreció $650,000.00, adjudicándose $91,846.70 por encima de lo consignado en la sentencia. No obstante, que la parte recurrida alegó una deficiencia de $310,55.18, la cual carecía de fundamento jurídico o fáctico. Por consiguiente, solicitaron la celebración de una vista evidenciaria conforme la Regla 57, dejara sin efecto o decretara la nulidad de la subasta sobre la propiedad en Carolina.

Por su parte, el **20 de junio de 2025**, WCC presentó su *Oposición a Moción Urgente de Nulidad de Subasta Pública y Celebración de Vista Evidenciaria y/o Reconsideración*. Mediante esta, resaltó que en la *Sentencia en Rebeldía* se condenó a los demandados a pagar la suma de $428,588.03 de principal más intereses a razón del por ciento anual fluctuante igual al tipo resultante al añadir 2.00% a la Tasa Preferencial, el cual sumaba al 30 de julio de 2013 la cantidad de $79,565.27, y sobre los cuales continuaron acumulándose a razón de $74.41 por día, hasta su total y completo pago. Añadió que, no fue hasta nueve (9) años de emitida la sentencia que llevaron acabo la *Venta Judicial* de la propiedad en Añasco, por lo que, no satisfizo la deuda debido a los intereses que siguieron acumulándose. La parte recurrida enfatizó que, la propiedad se adjudicó por $650,000.00, los cuales cancelaron las siguientes cantidades: $79,565.27 de intereses acumulados al 30 de julio de 2013; $372,416.21 de intereses acumulados desde el 30 de julio de 2013 al 16 de noviembre de 2023 (fecha en que se adjudicó la finca); y $50,000.00 de costas, gastos y honorarios de abogados. Por lo tanto, alegó que luego de aplicar la cantidad sobrante al principal, esta se redujo a $280,569.51 al 16 de noviembre de 2023. Consecuentemente, sostuvo que la alegación de los peticionarios sobre que el valor adjudicado era suficiente no era incorrecta, debido a que no tomaron en consideración los intereses que siguieron acumulándose. Asimismo, reiteraron que el balance del principal pendiente continuó devengando intereses, hasta la fecha de adjudicación de la propiedad en Carolina (5 de marzo de 2025) el cual acumuló $45,267.16 en intereses

adicionales. Por lo tanto, los demandados aun adeudaban la cantidad de $325,836.67, sobre los cuales, luego de la adjudicación de la propiedad en Carolina por $125,000.00, aun continúan con la deuda.

Por otro lado, WCC manifestó que emplazaron y notificaron correctamente a los peticionarios, y así lo determinó el foro primario. Esbozó que, el aviso de subasta fue notificado a las direcciones que las partes demandadas incluyeron en el *Short Term Loan Agreement* suscrito entre BPPR y Río Cañas, SE. A su vez, indicó que algunas cartas fueron devueltas, no porque la dirección estuviera incorrecta, sino porque no fue reclamada. Por ello, arguyó que actuó conforme a derecho al notificarles a las últimas direcciones conocidas.

El **16 de julio de 2025**, los peticionarios presentaron su réplica a la oposición instada por WCC. En esencia, alegaron que el cálculo propuesto por WCC contravenía el *Acta de Subasta* emitido por el Alguacil sobre la finca de Añasco, el cual establecía el crédito total al 25 de octubre de 2023 en $650,000.00. Asimismo, señalaron que el *Acta de Subasta* no especificó que el importe del crédito superaba la postura ofrecida como sugirió WCC que se interpretara retroactivamente. Finalmente, resaltaron que la parte recurrida actuó de mala fe al dejar de ejecutar la garantía, dejando acumular intereses por el término de 9 años y 11 meses, cuando se adjudicó la finca.

Mientras que, el **5 de agosto de 2025**, WCC presentó una dúplica a la réplica de la Sucesión López. En esta, plantearon que la cantidad adjudicada por la finca de Añasco fue en abono de la *Sentencia*, y sobre la cual continuaba acumulando intereses hasta su total y

completo pago. Añadió que, "hasta que no se satisfaga la totalidad de la Sentencia o cuando se trate del último diligenciamiento que satisfaga la sentencia, entonces el alguacil o alguacila tomará constancia del diligenciamiento en el documento original del mandamiento de ejecución, no antes." En cuanto a la alegación realizada por los peticionarios sobre la "mala fe", expresó que en los casos de sentencias por cobro de dinero, se toma en consideración los términos que dispone el Código Civil para instar dicha causa de acción, a la par con el término de la Regla 51.1 de Procedimiento Civil. Por lo tanto, sostuvo que no actuó de mala fe, pues la ejecución de la sentencia tenía un término de quince (15) años, el cual vencía en el 2029.

Así las cosas, el **11 de septiembre de 2025**, el foro primario notificó la *Resolución* recurrida, mediante la cual declaró *No Ha Lugar* a la *Moción Urgente de Nulidad de Subasta Pública y Celebración de Vista Evidenciaria y/o Reconsideración* instada por la Sucesión López. Concluyó que, WCC no violó el debido proceso de ley y cumplió con las normas aplicables sobre la notificación y aviso de subasta a una parte que estaba en rebeldía. Asimismo, indicó en cuanto al reclamo de la deuda, que la parte recurrida proveyó un desglose sobre la cantidad adeudada, el cual continuaba acumulando intereses, por lo que, era incorrecto el argumento de los peticionarios sobre la inexistencia de una deuda que abonar y la cual había sido notificada conforme a derecho. Finalmente mencionó que, en las acciones de cobro de dinero, se toma en consideración su término prescriptivo, el cual en este caso era de quince (15) años. Asimismo, tomó en consideración que hubo cambios en las partes demandantes

del caso, y una vez WCC adquirió la acreencia procedió con diligencia y conforme a derecho.

Aun en desacuerdo, el **26 de septiembre de 2025**, la Sucesión López presentó otra moción de reconsideración. Por su parte, el **16 de octubre de 2025**, WCC presentó su oposición a la segunda reconsideración, e indicó que los peticionarios habían presentado los mismos argumentos que el foro primario había atendido. Por lo que, no procedía la moción y se debía denegar.

Así las cosas, el **17 de noviembre de 2025**, el foro primario mediante *Resolución y/o Orden*, declaró *No Ha Lugar* la reconsideración presentada, y acogió los argumentos citados por la parte recurrida.

Aun inconformes, el 17 de diciembre de 2025, los peticionarios presentaron el recurso de epígrafe, mediante el cual plantearon los siguientes señalamientos de error:

> Erró el Honorable TPI al denegar la Moción Urgente de Nulidad de [Segunda] Subasta Pública y Celebración de Vista Evidenciaria y/o Reconsideración, ya que los titulares co-demandados no fueron notificados a "su última dirección conocida" a saber aquella "razonablemente calculada, a la luz de las circunstancias del caso, para darle una notificación efectiva de la venta" según la Regla 51.7 de Procedimiento Civil de 2009 y la jurisprudencia aplicable; constituyendo una privación de su derecho constitucional al Debido Procedimiento de Ley según la Constitución del E.L.A., Sección 7. II.

> Erró el Honorable TPI al denegar la Moción Urgente de Nulidad de Subasta Pública y Celebración de Vista Evidenciaria y/o Reconsideración porque al momento de la subasta celebrada el 5 de marzo de 2025 del Inmueble II no existía deuda exigible alguna.

> Erró el Honorable TPI porque ante la impugnación de la subasta pública por los comparecientes y bajo la Regla 51.7 (a) de Procedimiento Civil de 2009 y la jurisprudencia interpretativa, la subasta pública del apartamento "Uno-J" del

Condominio Villas del Mar Este el 5 de marzo de 2025, procedía la celebración de vista judicial evidenciaria antes de disponer del asunto.

El 18 de diciembre de 2025, emitimos una *Resolución* en la cual le concedimos a la parte recurrida el término de quince (15) días contados desde la presentación del recurso para que se expresaran.

El 7 de enero de 2026, WCC presentó su Moción de *Desestimación de Petición de Certiorari*.

Contando con la comparecencia de las partes, procedemos a resolver la controversia ante nuestra consideración.

## II.

### -A-

El *certiorari* es un recurso extraordinario discrecional expedido por un tribunal superior a otro inferior, mediante el cual el tribunal revisor está facultado para enmendar errores cometidos por el foro revisado, cuando "el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley." Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Véase, además: *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917-918 (2009). Asimismo, nuestro Tribunal Supremo ha expresado que su expedición descansa en la sana discreción del tribunal. *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 729 (2016).

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada*, In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de este recurso

discrecional. Así, al determinar la procedencia de la expedición de un auto de *certiorari*, este Tribunal deberá considerar, de conformidad con la citada Regla 40, *supra*, si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho. Así también, debemos tomar en consideración si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por parte del Tribunal de Primera Instancia.

También examinaremos si el asunto planteado exige consideración más detenida a la luz de los autos originales o de alegatos más elaborados, o si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración. Finalmente, debemos analizar si la expedición del auto solicitado evita un fracaso de la justicia. Véase, Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

En el contexto del *certiorari* como mecanismo adecuado para revisar resoluciones y órdenes post sentencia, nuestro Tribunal Supremo expresó *en IG Builders et al. v. BBVAPR*, supra, pág. 339, que los criterios de nuestra Regla 40, *supra*, adquieren mayor relevancia en aquellas situaciones en las que "no están disponibles métodos alternos para asegurar la revisión de la determinación cuestionada."

### -B-

La jurisdicción es la autoridad que posee un tribunal o un foro administrativo para considerar y adjudicar determinada controversia o asunto. *Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises, Inc*., 207 DPR 586, 600 (2021); *Cancel Rivera v. González Ruiz*, 200 DPR 319, 330 (2018);

*Pérez López v. CFSE,* 189 DPR 877, 882 (2013). Es norma reiterada que los tribunales tienen el deber de analizar de forma prioritaria si poseen jurisdicción para atender las controversias presentadas ante su consideración, puesto que estamos llamados a ser celosos guardianes de nuestra jurisdicción. *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 268 (2018); *Lozada Sánchez v. JCA,* 184 DPR 898, 994 (2012). La falta de jurisdicción trae consigo las siguientes consecuencias:

> (a) no es susceptible de ser subsanada; (b) las partes no pueden voluntariamente conferírsela a un tribunal, como tampoco puede este arrogársela; (c) conlleva la nulidad de los dictámenes emitidos; (d) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (e) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso; y (f) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *González v. Mayagüez Resort & Casino,* 176 DPR 848, 855 (2009).

A tono con lo anterior, el Tribunal Supremo de Puerto Rico ha expresado que los tribunales "debemos ser celosos guardianes de nuestra jurisdicción", por ello, tenemos la indelegable labor de auscultarla, incluso cuando ello no se nos haya planteado. *Cordero v. ARPe*, 187 DPR 445, 457 (2012). Por lo tanto, "las cuestiones jurisdiccionales deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo." *González v. Mayagüez Resort & Casino,* supra, pág. 856. Ello, ya que los tribunales no tenemos discreción para asumir jurisdicción donde no la hay. *Yumac Home v. Empresas Masso*, 194 DPR 96, 103 (2015).

Particularmente, a nivel apelativo, la Regla 83 del Reglamento del Tribunal de Apelaciones, según enmendado,

faculta a este foro a desestimar un recurso, a solicitud de parte o *motu proprio*, si se satisface alguno de los criterios contenidos en dicha regla. La referida regla dispone, en lo pertinente, lo siguiente:

> […]
>
> (B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:
>
> (1)  que el Tribunal de Apelaciones carece de jurisdicción;
>
> […]
>
> (C) El Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar o un auto discrecional por cualquiera de los motivos consignados en el inciso (B) precedente.

### -C-

La Regla 52 de Procedimiento Civil, 32 LPRA Ap. V, R.52, regula el procedimiento y perfeccionamiento de los recursos de *certiorari*. En lo pertinente, la Regla 52.2(b) de Procedimiento Civil, *supra*, establece que "[l]os recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia […] deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida."

Por su parte, la Regla 32(b) del Reglamento del Tribunal de Apelaciones, según enmendado, señala que "[e]l recurso de *certiorari* para revisar las resoluciones finales en procedimientos de jurisdicción voluntaria dictadas por el Tribunal de Primera Instancia se formalizará mediante la presentación de una solicitud dentro de los treinta días siguientes a la fecha de archivo en autos de una copia de la notificación de la resolución u orden recurrida, a menos que alguna ley

especial aplicable disponga un término distinto. Este término es jurisdiccional."

-D-

De otra parte, la Regla 47 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 47, preceptúa todo lo relativo a la solicitud de reconsideración. En lo pertinente al caso, la referida regla establece que la parte adversamente afectada por una orden o resolución del Tribunal de Primera Instancia podrá presentar, dentro del término de cumplimiento estricto de quince (15) días desde la fecha de la notificación de la orden o resolución, una moción de reconsideración. *Íd.* Añade que, dicha moción deberá exponer con suficiente particularidad y especificidad los hechos y el derecho que su parte promovente estima deben reconsiderarse, y fundamentarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales. *Íd.*

Ahora bien, en lo referente a la interrupción del término para ir en revisión al foro apelativo intermedio, la referida regla procesal indica que "[u]na vez presentada la moción de reconsideración quedarán interrumpidos los términos para recurrir en alzada para todas las partes. Estos términos comenzarán a correr nuevamente desde la fecha en que se archiva en autos copia de la notificación de la resolución resolviendo la moción de reconsideración." Regla 47 de las Reglas de Procedimiento Civil, *supra*.

### III.

En el caso de autos, la Sucesión López presentó el **17 de diciembre de 2025** el recurso de *certiorari* de epígrafe. No obstante, luego de evaluar el tracto procesal y el derecho aplicable, concluimos que carecemos de jurisdicción para atender en sus méritos las controversias presentadas.

El **12 de mayo de 2025**, el foro primario notificó una *Resolución*, mediante la cual indicó que la *Sentencia* dictada el 10 de noviembre de 2014 había sido notificada cumpliendo con las Reglas de Procedimiento Civil. Por ello, declaró *No Ha Lugar* a la moción presentada por la parte peticionaria. En desacuerdo, el **27 de mayo de 2025**, el último día hábil para presentar en tiempo una moción de reconsideración, la Sucesión López presentó una *Moción Urgente de Nulidad de Subasta Pública y Celebración de Vista Evidenciaria y/o Reconsideración*. Mientras que, el **20 de junio de 2025**, WCC presentó su *Oposición a Moción Urgente de Nulidad de Subasta Pública y Celebración de Vista Evidenciaria y/o Reconsideración*.

Evaluadas las mociones, el **11 de septiembre de 2025**, el foro primario notificó la *Resolución* recurrida, mediante la cual declaró *No Ha Lugar* a la *Moción Urgente de Nulidad de Subasta Pública y Celebración de Vista Evidenciaria y/o Reconsideración* instada por la Sucesión López.

Sin embargo, aun en desacuerdo, el **26 de septiembre de 2025**, la Sucesión López presentó una segunda moción de reconsideración. Por su parte, el **16 de octubre de 2025**, WCC presentó su oposición en la cual indicó que los peticionarios habían presentado los mismos argumentos que el foro primario había atendido. Por lo

que, no procedía la moción y se debía denegar. Así las cosas, el **17 de noviembre de 2025,** el foro primario mediante *Resolución y/o Orden*, declaró *No Ha Lugar* la reconsideración presentada, y acogió los argumentos citados por la parte recurrida.

A partir de la denegatoria a la moción de reconsideración del **11 de septiembre de 2025,** es que la Sucesión López disponía de treinta (30) días, para presentar el recurso pertinente ante este Foro. No obstante, los peticionarios presentaron el recurso el 17 de diciembre de 2025, luego de transcurrido en exceso el término de treinta (30) días que establece nuestro estado de derecho.

Conforme dispone nuestro ordenamiento jurídico, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, ya que no tenemos discreción para asumirla si no la hay. Por ello, las cuestiones relativas a la jurisdicción son privilegiadas y, como tal, deben atenderse y resolverse con preferencia y prontitud. La falta de jurisdicción no es susceptible de ser subsanada. El asunto jurisdiccional incide directamente sobre el poder para adjudicar una controversia. Por ello, un dictamen emitido sin jurisdicción es nulo en Derecho y, por lo tanto, inexistente. Por consiguiente, una vez un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la inmediata desestimación del recurso apelativo de conformidad con lo ordenado por las leyes y los reglamentos. *SLG Szendrey-Ramos v. F. Castillo,* supra.

Por lo tanto, concluimos que el recurso se presentó de manera tardía, y carecemos de jurisdicción para atenderlo.

**IV.**

Por los fundamentos antes expuestos, **DESESTIMAMOS** el recurso de epígrafe por falta de jurisdicción por tardío.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones